## Case No. 2,037.

### BROWNELL et ux. v. DE WOLF.

[3 Mason, 486.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1824.

#### WILLS—REVOCATION—REPUBLICATION.

1. A devised to "all his surviving children in equal divisions" all his real estate, and subsequently by a codicil revoked the devise as to his daughter E, without any devise over of her share. *Held*, that the devise being to the children as tenants in common, the revocation as to E did not pass her share to the other

[1] [Reported by William P. Mason, Esq.]

surviving children, but it was intestate estate.

2. A codicil confirming a will is in law a republication of the will so as to pass real estate intermediately purchased.

3. A legacy bequeathed to a granddaughter by the codicil, "in lieu" of a devise in the will to her mother, who had since deceased, is a revocation of the original devise to the mother.

Ejectment [by Brownell and wife against Charles De Wolf] for certain parcels of land in the state of Rhode Island. [Judgment for plaintiffs.]

The case arose upon the construction of the will of Charles De Wolf, late of Bristol in the state of Rhode Island, deceased. The material clauses upon which the questions arose were as follows: The will was made in May, 1806, and after the usual introductory clause it proceeds thus: "First, after the payment of all my just debts and funeral charges, I give and bequeath all my real and personal property, household furniture excepted, to my surviving children in equal division." It then directs his sons, George and Charles, who were his executors, to hold the part, when divided, which was allotted to his son William, then insane, and to apply the interest thereof to his support, and after his death, if he should not be restored to his senses, to take the same to their own use as a compensation for their attention. The testator then proceeds to dispose of his household furniture generally among his surviving daughters, making other provisions for the use of the same by his wife during her life, and giving his wife certain property in lieu of dower. Then comes the following clause: "Item. I give all my real estate to my surviving children to be equally divided among them." He then makes certain specific bequests of personal property to his sons and daughters respectively, by name, and directs in case of his death while his younger children are minors, that his executors should set off to them his bank stock, to go as far as it might in payment of their shares of the personal estate. Such is the substance of the will. At this period the testator had seven children living, viz. George, Charles, William, Sophia, Martha, Eliza, and Lucia Emelia. Whether he had had other children, who were then deceased, does not appear, though in some aspects of the will that fact might have been very material. Sophia died in March, 1808, leaving no issue. In May, 1812, the testator made a codicil to his will (declaring it to be such), one great object of which seems to have been to disinherit his daughter Martha, who it seems had married against his wishes. By this codicil he says: "Whereas in my said will I have given to my daughter Martha as therein expressed, every part and parcel of said will as it respects my daughter Martha be null and void, and hereby revoked; and that I do hereby order and declare, and my will is, that my said daughter Martha have the

sum of five dollars only, to be paid her by my executors; and my will further is, that the portion or legacy, which was given in my said will to my daughter Martha, shall be equally divided, and given to my other heirs, as is therein expressed; and in case my daughter Martha should outlive or survive her husband (so called) Thomas Warren I do hereby recommend her to the brotherly care of my two sons, George De Wolf and Charles De Wolf, that they do supply her with comfortable food and clothing." He then makes other provisions respecting his wife and his household furniture, &c. and concludes by declaring, that if any of his heirs should, contrary to this codicil, give any of his estate to his daughter Martha, her husband, or children, the same shall be forfeited to the poor of the town of Bristol. In December, 1814, William died without issue, and Eliza, having intermarried with one William Vernon, died in April, 1815, leaving one child, Eliza De Wolf Vernon. In June, 1816, the testator made another codicil (his daughter Lucia Emelia having also incurred his displeasure by marriage,) in which, after reciting that by his will in 1806, he had made his daughters Martha and Lucia Emelia equal with his other children, and that by a codicil "made, published, and annexed" to his will, bearing date in May, 1820, he had revoked what he had given to Martha, he adds: "I do by this my writing, which I hereby declare to be a second codicil to my said will, make null and void what I have done in my said will and first codicil respecting my said daughters Martha and Lucia Emelia;" and he then directs his executors to invest $10,000 in the contemplated national bank, for each of his said daughters, &c. "the interest or dividend of which, as they become due, are to be paid to my said daughters during their natural lives, and to the heirs of their bodies respectively (if such they may have,) till said heirs of each of my said daughters shall have arrived to the age of twenty-one years. And when all the heirs of either of my said daughters shall have arrived to the age of twenty-one years. then the said sum of $10,000 may be divided equally between them; and in the event of either of my said daughters dying leaving no heirs, or of having heirs, such heirs dying before they come to the age of twenty-one years, then the above stock shall revert equally to my surviving children." He then, "in lieu of what he had bequeathed in his will to his daughter Eliza," bequeaths to her daughter Eliza De Wolf Vernon the sum of $20,000 to be invested, &c. After making some other provisions, he revokes the clause of forfeiture contained in the former codicil. In February, 1820, the testator made a third codicil to his will, reciting that a change of circumstances had required him to make some alterations as to the manner of investing the $20,000 given to his granddaughter, E. D. Vernon, and he accordingly substituted

other provisions. He then proceeds to make other provisions for his wife, in lieu of her dower, and then makes the following devise: "It is my will that the house and farm which I bought, lying in Peppersquash, which I bought for my daughter Martha, shall be her property during her life, and at her decease shall descend to her oldest male heir; but in case there should be no male heir, then the estate to be equally divided among her surviving heirs. It is also my will, that the house I own in Providence, together with the furniture, I give to my daughter Lucia E. Brownell during her life, and at her decease I bequeath it to her oldest male heir; but in case there should be no male heir, then the estate to be equally divided among her surviving heirs." He then closes the codicil as follows: "All other parts of my will which this last codicil does not affect, to be observed and complied with. All my personal estate (except what is before disposed of), after all my debts are paid, I give to my sons George and Charles De Wolf. That my intentions may be fairly understood in my second codicil, as it respects the gift to my two daughters, my meaning is, that the interest of the $10,000 for each of them shall be paid to them during their natural lives." In the intermediate time between the making of the will in 1806 and the making the last codicil, viz. in the years 1806, 1810, 1811, 1813, 1817, and 1818, the testator purchased certain parcels of real estate, of which the plaintiffs claim one fifth part as the share of Lucia Emelia (one of the plaintiffs) in her father's estate, as intestate estate. The testator also purchased other real estate in 1821 and 1822, and died in the month of August, 1822, and his will and the codicils thereto were duly proved and approved by the proper court of probate.

The cause came on for argument upon a special verdict in substance as follows: "We find, that on the 27th day of May, 1806, Charles De Wolf of Bristol, &c. was seized in his own right in fee simple of all the lands of which he died seized, except certain of the lands hereinafter mentioned: that then and there he made and executed his last will and testament, in the words and figures as set forth in the annexed copy thereof, which is to be taken as a part of our finding: that said will was executed in due form of law and is duly proved: that at the date of said will the testator had living seven children, viz. George De Wolf, Charles De Wolf, Jun., William De Wolf, Sophia De Wolf, Martha De Wolf, Eliza De Wolf and Lucia Emelia De Wolf. That three of them deceased in the lifetime of the testator, viz. Sophia, William, and Eliza: that Sophia died 14th March, 1808, single, leaving no lineal heir: that William died on the 30th of December, 1814, leaving no lineal heir: that Eliza intermarried with William Vernon, and died on the 11th of April, 1815, leaving one child, viz. Eliza De Wolf Vernon. We find, that the

testator afterwards, viz. on the 13th day of May, 1812, then and there made a codicil to said will in the words and figures, as set forth in the annexed copy thereof, which is to be taken as a part of our finding: that said codicil was executed in due form of law and is duly proved. And we find, that the testator afterwards, viz. on the 26th day of June, 1816, made another codicil to his said will, in the words and figures as set forth in the annexed copy thereof, which is to be taken as a part of our finding: that the same was executed in due form of law and is duly proved. We find, that the testator afterwards, viz. on the second day of February, 1820, made another codicil to his said will, in the words and figures as set forth in the annexed copy thereof, which is to be taken as a part of our finding: that the same was executed in due form of law and is duly proved. We find, that the testator died on the 20th day of August, 1822, that his said will and codicils were afterwards viz. on the 2d day of September, 1822, duly proved and approved before the court of probate for the town of Bristol, and letters testamentary granted to the executors named therein. We find, that the testator died seized and possessed in fee simple in his own right of the several real estates and their appurtenances described in the plaintiff's declaration. We find, that the said testator on the 30th of June, 1806, after making his said will, purchased a certain real estate situated in the town of Portsmouth, in the state of Rhode Island, bounded and described in the words and figures as set forth in the annexed copy, and died seized thereof, which is to be taken as a part of our finding. We find, that the said testator on the 13th of October, 1810, purchased another real estate, situated in the town of Bristol, in said state, bounded and described in the words and figures as set forth in the annexed copy, and died seized thereof, which is to be taken as a part of our finding. We find, that the said testator, on the 16th of March, 1811, purchased another real estate situated in the town of Portsmouth, in said state, bounded and described in the words and figures as set forth in the annexed copy, and died seized thereof, which is to be taken as a part of our finding. We find, that the said testator, on the 21st of January, 1813, purchased another real estate, situated in the town of Bristol, in said state, bounded and described in the words and figures as set forth in the annexed copy, and died seized thereof, which is to be taken as a part of our finding. We find, that the said testator, on the 19th of May, 1813, purchased another real estate, situated in the said town of Bristol, bounded and described in the words and figures as set forth in the annexed copy, and died seized thereof, which is to be taken as a part of our finding. We find, that the said testator on the 22d day of November, 1817, purchased another real estate situated in the said town of Bristol,

bounded and described in the words and figures as set forth in the annexed copy, and died seized thereof, which is to be taken as a part of our finding. We find, that the said testator purchased another real estate situated in the said town of Bristol, on the 5th of September, 1818, bounded and described in the words and figures as set forth in the annexed copy, and died seized thereof, which is to be taken as a part of our finding. We find, that the said testator, on the 9th of July, 1821, purchased another real estate, situated in the said town of Bristol, bounded and described in the words and figures as set forth in the annexed copy, and died seized thereof, which is to be taken as a part of our finding. We find, that the said testator, on the 19th day of October, 1821, purchased another real estate, situated in the town of Bristol, bounded and described in the words and figures as set forth in the annexed copy, and died seized thereof, which is to be taken as a part of our finding. We find, that the said testator, on the 2d day of August, 1822, purchased another real estate situated in the said town of Bristol, bounded and described in the words and figures as set forth in the annexed copy, and died seized thereof, which is to be taken as a part of our finding. But whether the said testator died intestate as to any part of the real estate demanded by the plaintiffs in their said writ and declaration, the jurors are ignorant, and pray the advisement of the court. If he did die intestate as to any part of the real estates demanded by the plaintiffs as aforesaid, then we find for the plaintiffs in right of the said Lucia Emelia, as one of the heirs at law of said Charles, deceased, one fifth of such intestate part. If he did not die intestate, as to any part of the real estates demanded by the plaintiffs as aforesaid, then we find for the defendants."

Argued at June term, 1824.

Hunter and Searle, for plaintiffs.
Whipple and Robbins, for defendant.

STORY, Circuit Justice. This clause turns altogether upon the construction of the will of Charles De Wolf, and three codicils thereto successively made by the testator. With the very laudable view of suppressing family litigation, by what he doubtless deemed the most certain and wise means, the testator directed, that no lawyer should be employed in the settling of his estate, and if any dispute should arise, that the heirs should settle it by three judicious honest men. If, instead of this cautionary clause, the testator had exercised the prudence which belongs to men of his own age and experience, he would have employed a lawyer to have drawn his will and codicils; and thus stopped in a great measure, at the source, the waters of bitterness. There probably have been few more striking examples of the infirmity of human judgment, or of the different manner

of expressing intentions, than these instruments afford. To say the least of them, they abound with provisions which would puzzle the most sagacious judgments to construe, in an entirely satisfactory manner.

Several questions have been argued at the bar. The first question is, whether the codicils, made after the will, amount to a republication of the will so as to include and pass the real estate purchased after the making of the will, and before the last codicil. As to the real estate purchased afterwards, there can be no doubt, that it did not pass, and that it is an intestate estate. Upon this question, after the decisions which have been made, whatever may have been my original doubts if the question were new, I feel myself bound to declare, that the subsequent codicils do, and at all events the last codicil does amount to a republication of the original will, so as to pass the real estate purchased in the intermediate period. It was expressly adjudged in Acherly v. Vernon, Comyn, 381, more than a century ago, by Lord Macclesfield, that the signing and publishing of a codicil by the testator, in the presence of three witnesses, was a republication of his will, and both together made but one will, and his decree was affirmed in the house of lords. This decision appears to have been contrary to some former authorities, but it was afterwards expressly recognized and acted upon by the master of the rolls in Potter v. Potter, 1 Ves. Sr. 438. In Barnes v. Crowe, 1 Ves. Jr. 486, 4 Brown, Ch. 2 (see 1 P. Wms. 274), the lords commissioners, upon an examination of all the cases, considered Acherly v. Vernon, a decisive authority, and in Pigott v. Waller, 7 Ves. 98, Sir William Brant, after the fullest deliberation, held the doctrine, whatever might have been its original difficulty, now incontrovertible. But the present case is still stronger; for here there is an express confirmation of this will by the testator in the last codicil, for he declares, that all other parts of his will, which this last codicil does not affect, is to be observed and complied with. Another question is, as to Martha's share, whether by the subsequent codicils it was devised over to the other children, or became in the event intestate estate. As to this, it is very clear, that the first codicil operates as a direct revocation of Martha's share, and the testator proceeds to bequeath it to his other heirs, meaning, without doubt, his other children. There is nothing in the second codicil, that revokes this bequest; that codicil recognises the previous revocation of Martha's share, and proceeds to declare, that the testator revokes and makes null and void all the bequest in his will and first codicil to Martha, and also to Lucia Emelia. The bequest therefore to Martha, of five dollars in the first codicil, is revoked, as well as the bequest to Lucia Emelia. The testator then proceeds to bequeath to them respectively $10,000 dollars, to be invested in a particular manner, and thus leaves them both without any other bequests than those contained in the second codicil. The third codicil in no respect changes the legal operation of the preceding revocations, but merely gives additional devises to Martha and Lucia Emelia, and thus leaves the devise over of Martha's share in the first codicil with its full operation as to all property, except that specially mentioned in the second and third codicils. I am therefore of opinion, that, as to Martha's share, there is no intestacy. Another question is, whether the bequests to Eliza De Wolf Vernon after the death of her mother, as contained in the second and third codicils, is a revocation of the share bequeathed to her mother by the original will and first codicil. The testator in his second codicil says, that the legacy given to his granddaughter is "in lieu of what I intended as expressed in my will for my dear daughter Eliza deceased." This is plainly a substitution for the original devise, and operates as a revocation of it, even if under the statute of Rhode Island the death of the devisee would not have made it a lapsed devise; so that there is no pretence to say, that this is a case of a lapsed devise. If it be intestate estate, it is because the other terms of the will and codicil do not pass it to any other of the devisees. Another question has been hinted at rather than argued, and, that is, whether the estate devised to William, he having died in his father's lifetime without issue, passed to the other sons, George and Charles, according to the terms of the original will. I am clearly of opinion, that it did not. The devise over to them was not intended to take effect, unless William survived his father, and it was given to them as a compensation for their services and attention to him after the father's death. To give effect to it now would manifestly contravene the intention of the testator; and therefore George and Charles can take it only as general devisees in common with the other devisees, or it must be deemed intestate property.

Another, and that which the parties consider the principal question, is, whether the share of Lucia Emelia, revoked by the second codicil, is intestate property, there being in that case no express devise over, as there is of the share of Martha. The argument of the defendant's counsel is, that the original will gives the real estate to all the children, who shall survive the testator; that the subsequent codicil by revoking the devise to Lucia Emelia, becomes incorporated into the will, so as to give it the same effect as if the words were to all my surviving children, except Lucia Emelia. I observe, that both parties were agreed at the argument, that by "surviving children" in the will, is meant the children who should survive the testator. If he never had any other children except the seven then living, the

inference would be perfectly irresistible. If he had had other children, who were then dead, the words "surviving children" might just as well mean "children now living," as "children who shall survive me;" and looking to the face of other parts of the will and codicils, I confess, that I should have some difficulty in not giving the words the meaning of "children now living." The testator supposes in his will, that he is providing for all his children, and to give them equal shares of his real property, and he does not put any contingency, as to survivorship among them in any clause connected with that devise; and when he means to provide for a case of survivorship, as in his codicils he does, he always uses the language appropriate to such cases. Could the testator mean, that if any of his children should die during his life-time, leaving issue, that the latter should be wholly excluded? Yet such would be the effect upon the supposition maintained at the bar, though so solicitously guarded against by the statute of Rhode Island as to lapsed devises. See St. R. I. 1798, 1822; Laws R. I. (Ed. 1822) p. 76, § 6. I suggest this for consideration only, as there is nothing in the special verdict, which enables me to say, that the testator ever had any other children. We must take the case as it is, and deal with it, as if "surviving children" means children who shall survive the testator.

Now it is observable, in the first place, that this is not a case where the devise is of a residue, but it is of the whole real estate. In Humphrey v. Tayleur [1 Amb. 136], cited in Bac. Abr. "Wills," C, p. 363, where A devised the residue of his personal estate to B and C, and made them executors, and afterwards revoked every legacy to B, and his being executor, it was held, that C took the whole residue. But this was a case of personalty, where the parties were executors, and took as joint tenants. But Creswell v. Cheslyn, 2 Eden, 123, is a decision which goes somewhat to shake the authority of the former case, if that be supposed to assert any general doctrine. In this case the testator devised the residue of his real and personal estate to his sons A and B, and his daughter C, as tenants in common, and by a subsequent codicil revoked that devise to C, and gave her in lieu thereof £500 in South Sea annuities, the interest payable to her during life, and at her death the principal sum to be divided among her brothers and sisters, and in all other things he confirmed his will. Lord Chancellor Henley held, that the two sons did not take the whole residue, but the daughter's third was intestate property. His language was: "The testator has made no new devise, by the codicil, of the share which he has revoked from his daughter; and therefore the sons can have no greater interest than they had by the original will." This decree was affirmed in the house of lords. It is true, that,

in the note to this case, the reporter cites Sergeant Hill's opinion, containing a quaere if this decision be right; for the confirmations by the codicil are to be conceded as one new-modeled will. But it does not strike me, that this consideration is decisive. For if in the same will a prior bequest is revoked and another substituted, how does it follow, that the testator meant to enlarge the share distinctly given to any other co-legatee? If he meant any such enlargement, why not state it? But if this were true as to the residue, how can that apply to the devise of the entirety of an estate? I can readily understand, why, in case of a devise of a joint estate to two or more, a revocation as to one leaves the others to take the whole, for joint tenants are seized per my, et per tout, and the interest is in the entirety, and therefore if one joint tenant die in the lifetime of testator, the survivor will take the whole, because the original devise is sufficient to pass the whole estate. That was so held in Larkins v. Larkins, 3 Bos. & P. 16, 109 (see, also, Com. Dig. "Devise," F, 2; Doe v. Sheffield, 13 East, 526, 536); but it was there admitted, that if the devise were to them as tenants in common, it would be otherwise, for the plain reason, that a new estate must pass to the other devisees, which a mere revocation would not carry, since it is not a gift.

Now what is the present devise? It is, of all the real estate to the surviving children to be equally divided among them. These words are construed at common law, to carry a mere tenancy in common, and this intention is still more strongly enforced by the statute of Rhode Island, which directs all joint estates to be construed as tenancies in common, unless there are clear words to the contrary, in the instruments. Schedules R. I. (Ed. 1822) p. 208, § 8. It is true, that none but those children, who survive the testator, are to take upon the construction agreed to by the parties; but all who take are to take as tenants in common, in "equal divisions." Then the devise is in effect, that all the children, who survive, are to take a several, and distinct, and equal proportion, and no one is to take the share of the other. Four children did survive, and the devise, in the event, is to each of them upon the terms of the will, a quarter part. If no codicils had been made, each child would have taken this quarter part, as a tenant in common. Martha's share was revoked by the first codicil, and given over to the other surviving children; and thus an express gift was superadded to the revocation. But Lucia Emelia's share was simply revoked, and there was no devise over. Upon the principle then already mentioned, here is the case of a gift to tenants in common, and a revocation as to one does not and cannot, by law, enlarge the estate of the others. The argument of the defendants is, that the will and the codicils are now to be construed as one

instrument, and that the devise is to be read, as if it were "to all my surviving children, except Martha and Lucia Emelia, in equal divisions." But this would be to create new interests in the other surviving children, instead of simply revoking the devises to Martha and Lucia Emelia. It is true, in a sense, the will and codicils are to be construed as one instrument, but not so as to give a greater effect to the words of either than they purport. Unless it can be established, that the revocation of an estate to one tenant in common, carries by implication the whole estate to the other tenants in common, it is impossible to read this will as the defendants wish. The revocation excepts the daughters from the benefit of the devises to them, but does not except them from the class of surviving children. They still fall within the description, although their shares are taken from them. We must change the words of the will, if we would make such an exception. We must make the will, and not merely construe it, upon a conjecture of the intention of the testator. We know, that the testator once intended, that all his surviving children should take equally, that he was aware, that a revocation did not pass the estate over to the other children, and in the case of Martha, that he provided for that difficulty. We cannot know, that he intended the same as to Lucia's share, for he has not said so; nor has he in any way expressed the intention of increasing the shares of the other children. If he had such an intention, and has omitted to put it into a legal shape, his neglect cannot now be helped. If he was ignorant of the legal defect, still the devisees must abide by the consequences. If the argument of the defendants were applicable here, it would be so to all cases of a tenancy in common; and yet the law is clearly the other way.

The case of Doe v. Sheffield, 13 East, 526, has been cited as bearing upon the present. But it does not strike me as having any material application. There, the devise was to the sisters of J. H.; and at the time of making the will one sister only was living; and the question was, if she should take the whole. The court decided, that she should, because the estate was devised to the sisters as a class, and so intended for all who were living at the death of the testator. The case was distinguished from that of a lapsed legacy, because there the devisee dies between the period of making the will and the death of the testator. In the present case there is no doubt, that Lucia Emelia is a surviving child within the intention of the will; she is comprehended in the class; and in Doe v. Sheffield, Mr. Justice Bailey recognised, in the fullest manner, the distinction already alluded to, between tenants in common and joint tenants. See, also, Page v. Page, 2 P. Wms. 489, 2 Strange, 820. Then again it is said, that where a death will not produce a lapse of

the devise, there a revocation will not produce an intestacy as to that devise. This principle is correct, but not in the sense in which it is stated at the bar. In every case where an estate is given upon the contingency of surviving the testator, if the devisee dies in the lifetime of the testator, it is, in the true sense of the phrase, the case of a lapsed devise; but in the sense of the argument at the bar, it could not be so, because the party could never answer the description of survivor. Nor are the cases of Doe v. Roach, 5 Maule & S. 486, and Hopkins v. Hopkins, Cas. t. Talb. 44, applicable to the present; for there no question arose, upon the effect of a revocation, but the principal point was, whether a devise over, which was to take effect after a devise to A, in case he should die without issue, could take effect as an executory devise, A having died without issue in the testator's lifetime. The court held that it might. There was indeed another point, whether the devise over being to the children of B, as tenants in common after a life estate, should give those children, who survived the life estate, the whole, or whether all the children, who survived the testator, should take an interest, though some died before the estate vested in possession. The court held the latter to be the true construction. This last point has no bearing upon the present facts.

I have gone over all the points of the cause, and commented upon such of the authorities as seemed to me to require particular observations. Upon the whole, my opinion is, upon this special verdict, that the real estate, devised to Lucia Emelia by the original will and first codicil, is intestate property. In other words, it is now distributable into five shares, one of which belongs to George, one to Charles, one to Martha, one to Lucia Emelia, and one to Eliza De Wolf Vernon in right of her mother Eliza. I am glad that the amount in controversy will enable the parties to take the opinion of the supreme court upon this case, and to that court I cheerfully resign it. Judgment for the plaintiffs.