SAMUEL HAVEN *et ux.*, Appellants, *versus* MARY
FOSTER *et al.*
SAMUEL F. HAVEN *et al. versus* MARY
FOSTER *et al.*

The making of a codicil, duly attested to pass real estate, and referring to the will, is a republication of the will, so as in effect to incorporate the codicil with the will, and give to such combined instrument the same effect as if executed at the date of the codicil.

A testator, by his will, gives one half of all his estate to his brother John for life, and the other half, together with the remainder of the first half, in equal shares and in fee simple to all the children of his brother Andrew and his sister respectively, with survivorship if any of them shall die in minority. He afterwards purchases other lands, and then makes a codicil, which he directs to be annexed to the will and to be considered and taken as part thereof, and in which he revokes and annuls every bequest and devise made by the will to the children of his sister, and gives all and every part of his estate, of whatever description, which is in the will in any way given to the children of his sister, to the children of his brother Andrew, and ratifies and confirms the will in every thing except where it is revoked and altered by the codicil. It was *held*, that the will was republished by the codicil; that it contained words sufficient to embrace all the testator's estate held at the time of making the codicil, and of course no part of the property descended as intestate estate; that the clause of revocation in the codicil extended to the after-purchased land; and that the portion of the estate, including the after-purchased land, which but for the clause of revocation would have gone to the children of the testator's sister, was, by the codicil, devised to the children of Andrew.

ON the 24th of October, 1820, Thomas Foster made his last will, in which he directs his executors to invest 1500 dollars in bank stock, and to pay the interest or dividends thereof to Hannah Newell during her life.

He then proceeds : — " I give, bequeath and devise to my brother John Foster the use and improvement of one half of all my estate, except said 1500 dollars, during his natural life, and the other half, except said sum of 1500 dollars, in equal shares and in fee simple, to all the children of my brother Andrew Foster, and my sister Elizabeth Haven, respectively, who shall be living at the time of my decease, and the share o

any one or more of them who shall die a minor, to the survivors of them."

" From and after the death of said Hannah Newell, I give and bequeath the said 1500 dollars to the abovementioned children, in equal shares, and the share of any one of them who shall die in minority, to the survivors."

" From and after the decease of said John Foster, I give, bequeath and devise that part of my estate, the use and improvement of which is above given to him during his natural life, and all other estate which I have, and all right, title, interest and claim which I have in and to any estate not above bequeathed and devised, to the abovementioned children, in equal shares and in fee, and the share of any of said children who shall die in minority, to the survivors."

On the 3d of February, 1831, the testator made a codicil, written on the same paper, as follows : — " Whereas I, Thomas Foster above named, have heretofore made and duly executed the foregoing instrument, in writing, as and for my last will and testament, now I, said Thomas Foster, do hereby declare this present writing to be a codicil to said will and testament, and direct the same to be annexed thereto and to be considered and taken as part thereof ; and firstly, I do hereby revoke and annul each and every bequest and devise made, given and bequeathed, in and by said will and testament, to the children of my sister Elizabeth Haven ; and secondly, I give, bequeath and devise all and every part of my estate, of whatever description, which is in said will and testament in any way given and bequeathed to said children of Elizabeth Haven aforesaid, to the children of my brother Andrew Foster, mentioned in said will and testament ; and lastly, I do hereby ratify and confirm said will and testament in every thing except where the same is hereby revoked and altered as aforesaid."

The will and codicil were executed in due form to pass real estate, and were proved on May 17, 1831.

The testator's brothers Andrew and John, and his sister Elizabeth, survived him.

Partition of all the real estate of which the testator died seised, was made by commissioners appointed by the judge of

probate. They set off and assigned one half of the whole real estate to John Foster for life, and the other half to the four children of Andrew. The judge of probate passed a decree accepting the report of the commissioners, and from this decree two appeals were taken.

Samuel Haven and Elizabeth his wife appealed, because as to the lands acquired by the testator after the making of the will the testator died intestate, and one third of the same descended to his sister, Elizabeth Haven, the appellant, as one of his heirs at law.

Samuel F. Haven, and Francis Hilliard, in right of his wife Catharine D. H. Hilliard, appealed, because the commissioners did not assign to Samuel F. and Catharine, any part of the real estate, whereas by the legal operation of the will and codicil, they, as the only surviving children of the testator's sister Elizabeth Haven, are seised of one moiety of all the lands which the testator acquired after the making of the will, the one half in possession, the other half subject to the life estate of the testator's brother John Foster; or if not so seised of a moiety, are seised of two sixth parts, subject to a life estate of John Foster in one sixth part.

The cases were argued in writing by *Metcalf* and *F. Hilliard* for the appellants, and by *Sohier* and *A. Hilliard* for the appellees.

In behalf of the appellants, Samuel and Elizabeth Haven, it was contended that the codicil did not have the effect of republishing the will, and consequently that the real estate acquired after the making of the will, descended to the heirs at law.

The heir at law is not to be disinherited except by express words or necessary implication. Pow. on Devises, 566 ; *Denn* v. *Gaskin*, Cowp. 661 ; *Parsons* v. *Freeman*, 3 Atk. 747.

The question, what constitutes a republication of a will, has never been decided in Massachusetts. The remark of *Putnam* J., in *Miles* v. *Boyden*, 3 Pick. 216, that a codicil is considered a republication, so that after-purchased lands pass by the will, is a mere dictum.

Upon principles of reason and common sense, a codicil ought not to have the effect of passing after-purchased lands,

unless it in some way mentions or alludes to them. More especially is this the case, when these lands bear a large proportion (as in the present instance) to the testator's whole property. *Lane v. Wilkins*, 10 East, 238.

In England, after the statute of frauds, it was at first held that there could not be an implied republication. The modern English doctrine, that a codicil is a republication and passes after-purchased lands, is derived from the case of *Acherly v. Vernon*, Com. Rep. 381, 3 Bro. Parl. Cas. 85, 9 Mod. 68, (best reported in 10 Mod. 518,) but the facts of that case were peculiar and do not warrant the subsequent decisions founded upon it ; and although in England the law on this point may be regarded as no longer open to discussion, yet it has been there so strenuously resisted, that it can hardly be considered as binding in this commonwealth. 6 Cruise's Dig. *tit.* 38, *c.* 7 ; *Barnes v. Crowe*, 1 Ves. jun. 486 ; *Pigott v. Waller*, 7 Ves. 98 ; *Guest v. Willasey*, 2 Bingh. 429, and 3 Bingh. 614 ; 1 Rob. on Wills, *c.* 3. The facts in *Acherly v. Vernon* were such as to require the judgment there given, independently of the question whether a codicil *per se* amounts to a republication. *Bridgewater v. Bolton*, 1 Salk. 236 ; *Lane v. Wilkins*, 10 East, 253. In connexion with *Barnes v Crowe*, they cited Pow. on Dev. 673, and *Carleton v. Griffin*, 1 Burr. 554 ; and in connexion with *Doe v. Davy*, Cowp. 158, they cited *Heylyn v. Heylyn*, Cowp. 130 ; 6 Cruise's Dig. 109, 110 ; *Goodright v. Glazier*, 4 Burr. 2512.

If the English doctrine is law in this commonwealth, it must of course be received subject to the well established exception, that where the effect of a codicil is expressly confined to the lands devised by the will, it does not operate as a republication of the will, so as to make it pass after-purchased lands. *Heylyn v. Heylyn*, Cowp. 132 ; Pow. on Dev. 676 ; *Strathmore v. Bowes*, 7 T. R. 482 ; *Bowes v. Bowes*, 2 Bos. & Pul. 500 ; *Goodtitle v. Meredith*, 2 Maule & S. 5 ; *Rogers v. Pittis*, 1 Addams, 37 ; *Parker v. Biscoe*, 8 Taunt. 699 ; *Smith v. Dearmer*, 3 Young & Jerv. 278 ; *Dunlap v. Dunlap*, 4 Desaus. 321 ; *Kendall v. Kendall*, 5 Munf. 272. The case before the Court is parallel with *Bowes v. Bowes*, except that here the codicil contains a ratifying and confirm

ing clause, but this is mere form and has no effect towards republishing the will. So of the direction that the codicil be taken as part of the will. *Crosbie* v. *M'Dowall*, 4 Ves. 610; *Pigott* v. *Waller*, 7 Ves 119; *Gibson* v. *Montford*, 1 Ves sen. 494; *Gibson* v. *Rogers*, Ambl. 93; *Barnes* v. *Crowe*, 1 Ves. jun. 492; *Doe* v. *Davy*, Cowp. 158; *Potter* v. *Potter*, cited in Pow. on Dev. 660, 672, *Lane* v. *Wilkins*, 10 East, 242.

In the case of Samuel F. Haven and his sister, children of Elizabeth Haven, appellants, it was argued, that although in the construction of a will the intention of the testator governs, yet it governs in subordination, generally, to the rules of law, and more particularly, to the principle, that the testator is always supposed to understand the legal effect of his own language. *Hawley* v. *Northampton*, 8 Mass. R. 37; *Acherly* v. *Vernon*, 9 Mod. 77; Shep. Touch. 87; *Dawes* v. *Swan*, 4 Mass. R. 215; *Bowes* v. *Bowes*, 2 Bos. & Pul. 506; *Goodtitle* v. *Otway*, 7 T. R. 399; *Davis* v. *Hayden*, 9 Mass. R. 518; *Bott* v. *Burnell*, 11 Mass. R. 167.

The republication, if any, in the present case, is effected by the ratifying and confirming clause of the codicil, and not by the previous revoking clause and devising clause, nor by the codicil generally. *Bowes* v. *Bowes*, 2 Bos. & Pul 500; *Strathmore* v. *Bowes*, 7 T. R. 482; *Smith* v. *Dearman*, 3 Young & Jerv. 278; *Parker* v. *Biscoe*, 8 Taunt. 699; *Dunlap* v. *Dunlap*, 4 Desaus. 321; *Kendall* v. *Kendall*, 5 Munf. 272. As between these appellants and the appellees the republication of the will is admitted; and these appellants maintain, in support of their claim, this general position : — The revocation and devise contained in the codicil are confined to the lands which the testator owned at the making of the will, but the republication applies to the after-purchased lands also; the consequence is, that by the will and codicil taken together, the after-purchased lands go to the same persons, who, by virtue of the will alone, if no codicil had been made, would have taken the lands owned by the testator at the making of the will; and these appellants are entitled to the shares, and in the capacities, set forth in their reason of appeal. *Ex parte Ilchester*, 7 Ves. 377; *Strathmore* v *Bowes*, 7 T. R. 485; *Bowes* v. *Bowes*, 2 Bos. & Pul. 500

*Doe* v. *Hicks*, 8 Bingh. 475 ; *Johnston* v. *Johnston*, 1 Philli-more, 497 ; 5 T. R. 53, note ; *Brant* v. *Willson*, 8 Cowen, 56 ; *Guest* v. *Willasey*, 2 Bingh. 429.

Haven
v.
Foster.

*April term* 1834

SHAW C. J. drew up the opinion of the Court. It is now a rule of law too well established to be shaken, and one upon which titles to property have long rested in this common-wealth, that a devise of real estate can take effect only as to estate, of which the testator is seised at the time of making the devise, that is, at the date of the execution of the will, and that however strongly the intention is expressed by the testator, to extend the operation of his last will, so as to make it pass the estate which he might afterwards acquire before his death, yet according to the rules of law such an intention cannot have effect. In this respect the law differs entirely from that which governs a gift of personal estate ; it being a well known rule, that if such be the expressed intent, a last will and testament will operate to convey after-purchased personal estate, as effect-ually, as to pass the property held by the testator at the exe-cution of his will. It is in vain now to question the sound-ness of the reasons, upon which this rule in regard to real estate is founded, or to insist that it often defeats the intentions of testators, or to contend that the rule in reference to per-sonal property is more reasonable. It is to be maintained, be-cause it is a rule of law, which has been adopted and practised upon in this commonwealth, and is one of those rules, upon which titles to property depend, to a great extent. *Hays* v. *Jackson*, 6 Mass. R. 149. [Altered by Revised Stat. *c.* 62, § 3.]

The reason upon which the rule is founded, may tend to illustrate it, and govern its operation. We take the reason of the rule to be, that a devise is deemed to be a species of conveyance, by which real estate is transferred by force of the statute of wills ; that though its operation is necessarily postponed to the time of the death of the testator, and though the gift is conditional, depending upon the condition, that the will is not cancelled or revoked by the testator, and that the devise is not adeemed by the alienation of the estate by the devisor in his lifetime, or otherwise, yet when it does take ef-fect upon the happening of the conditions, it is considered as relating back and taking effect by force of the devise, as a con

·veyance and transfer of the estate.   Then in analogy to the common law rule, that a conveyance can only take effect to pass vested estates, the devise, as to estates of which the devisor is not then seised, is inoperative and void.   That such is the principle of the rule is manifest from this consideration, that in England the execution of a will, by which a devise is made, like that of a deed or any other instrument of conveyance, is to be proved by the party claiming title under it, whenever such title is drawn in question ; and the probate of the will in an ecclesiastical court, is of no avail to give it effect, as a devise of real estate.

From this reason of the rule, we shall readily perceive the fitness of the other connected with and depending on it, which is equally well established, namely, that if the will be republished, then all the words contained in it, and which have reference to time, must be considered as applying to the time of the republication and not to that of the original will.   The very same words, may embrace very different parcels and amounts of estate, as they are used at one time or at another. If they are words of description, more or less general, as " all my real estate ;" — " all my real estate in such a coun ty ;" — " all my warehouses and wharfs in such a city ;" — " all my wild lands," &c., it is manifest, that such words, used on one day, would embrace a different estate, from that included in the same description on another day, as the estate described by them may have been enlarged or diminished by acquisition or alienation, in the mean time.   By the rule under consideration, the will is. considered as speaking on the day of republication, and to have the same effect as if originally made on that day, and to embrace the subject-matter, as it exists at that time.   Where, therefore, there is a general residuary clause, as if one devises all his real estate, or all the residue after specific devises, and afterwards acquires real estate, and does not republish his will, the residuary devise does not carry the after-purchased estate, because the devisee was not seised at the execution of the will.   But if such will be republished, after the purchase of the real estate, it carries this real estate, because the words of the original, as used and spoken on the day of republication, embrace it in terms.

But to give a republication this effect, the words of the will must be of such a character, as if used at the date of republication, would include the estate in controversy. The proposition may be stated broadly, that to constitute a good devise, the intent to devise and the power of devising, must concur. In general, the reason why a devise does not take effect, to pass after-purchased estate, is not that there is not a manifest intent to pass all the estate, but because, the devisee not being seised at the time, the legal power of devising is wanting. The question is therefore usually argued as if it was merely a question of power, in which the fact of intent is immaterial. But we think the true question is, do the intent and the power both concur, and the legal consequence will be, to give effect to the devise where they do concur, but to declare it inoperative, if either is wanting.

If, therefore, the language of the original will be such, as if used at the date of the republication, it would not include the after-purchased estate in its terms or description ; or, if the act of republication be accompanied with other provisions, indicating that it was the intention of the testator, to limit the operation of the will, as republished, to the same estate which was given, and which would legally pass by the original will, then, notwithstanding such republication, the devise will not include the after-purchased estate ; because, although the power then exists to devise, yet the intent is wanting, and as both do not concur, the after-purchased estate does not pass.

It was upon a similar ground that the case mentioned in the argument was decided, first in the Court of King's Bench, *Lady Strathmore* v. *Bowes*, 7 T. R. 482, and afterwards in the House of Lords, *Bowes* v. *Bowes*, 2 Bos. & Pul. 500. It was a question of construction upon the words of the will and codicil. In the House of Lords, Lord *Thurlow* differed in opinion from the judges and chancellor, and was of opinion that the codicil operated as a republication of the will, and that it was sufficiently broad in its terms to include the after-purchased lands. But the judges, and the chancellor for the time being, Lord *Eldon*, were of opinion, that it was the intent of the testator only to change the trustees, and to give to the new trustees the same estate only as had been given by the will,

and therefore that although the codicil operated as a republica-
tion of the will, yet that such republication did not so operate, as
to include the after-purchased estate, because it was the intent
of the testator, as manifested in the codicil, that it should not
be included.   Lo d *Eldon* stated the principle thus : " the true
question, seemed to be, whether from the words ' my *said*
lands ' a special intention to *exclude* the after-purchased estate
did not appear, in the same way as it would have appeared,
had he referred to the lands originally devised by a description
of locality ; but that indeed, if their lordships were not satisfied
that such a special intention did appear, the general rule respect
ing the operation of a republication, must operate in favor of
the appellants," that is, operate so as to include the after-
purchased lands in the devise.   2 Bos. & Pul. 507.

The principle was recognised and accurately stated by Lord
*Ellenborough* in the case of *Goodtitle* v. *Meredith*, 2 Maule &
S. 14.  " The effect of the republication is, to give an operation
to the codicil *per se*, and independently of any intention, so as to
bring down the will to the date of the codicil, making the will
speak as of that date, unless indeed a contrary intention be
shown, in which case it will repel that effect."

It has been argued in the present case, that the rule of law,
that the making of a codicil, duly attested to pass real estate,
and referring to the will, shall be considered as a republication
of the will, so as in effect to incorporate the codicil with the
will, and give to such combined instrument the same effect, as
if executed at the date of the codicil, has never been expressly
recognised as a rule of law, in this commonwealth, and that
upon principle, it ought not to be adopted.   Upon this point,
the Court are of opinion, that this is now to be considered
as a settled rule of law, and standing upon the same grounds
of reason and authority as most of those rules, upon which
titles to property now rest, in this commonwealth.   In many
cases, questions may arise, which may not appear to have been
decided in this commonwealth, partly on account of the greater
simplicity of our titles and modes of conveyancing, in conse-
quence of which such rules may not have been called into ac-
tion, and partly from the want of reports of judicial decisions,
until a comparatively recent period ; yet when such questions

do arise, we resort to decisions of English courts of law and chancery, especially of a date prior to the revolution, with confidence, as a part of our own judicial history, and as the most satisfactory source of sound and correct principles of law.

Whatever may have been the differences of opinion among eminent judges, in regard to the correctness of the rule in question, we consider it now settled upon satisfactory authorities, commencing with the case of *Acherly* v. *Vernon*, and recognised and confirmed by a series of modern decisions, both in England and in this country. Without going into a detailed statement of these cases, we shall barely refer to some of the leading cases on the subject. *Acherly* v. *Vernon*, Com. Rep. 381 ; *S. C.* 10 Mod. 518 ; *Potter* v. *Potter*, 1 Ves. sen. 438 ; *Barnes* v. *Crowe*, 1 Ves. jun. 486 ; *Pigott* v. *Waller*, 7 Ves. 98 ; *Rowley* v. *Eyton*, 2 Mer. 127 ; *Goodtille* v. *Meredith*, 2 Maule & S. 5 ; *Guest* v. *Willasey*, 2 Bing. 429 ; *Mooers* v. *White*, 6 Johns. Ch. R. 375 ; *Brownell* v. *De Wolf*, 3 Mason, 486 ; *Miles* v. *Boyden*, 3 Pick. 216 ; *Bowes* v. *Bowes*, 2 Bos. & Pul. 500. We take the rule settled by the authorities to be this, that *primâ facie*, the execution of a codicil to a will of lands, so executed itself as to be capable, within the statute, of passing lands, is a republication of such original will ; and that this is more especially and unequivocally the case, where the codicil contains words declaring and confirming the original will to be in force, either in whole or so far as it is not altered or revoked by the codicil itself; that the effect of such republication is, to make the will operate in the same manner, as if executed at the time of such republication, unless a special intent is manifest in the codicil, to restrain such operation and give it a less extensive effect ; and that where the will contains a residuary clause or words of general description, sufficient to embrace all or any particular description of real estate, of which the devisor is seised, the effect of such republication is, to make the will take effect and operate upon and pass any real estate falling within such description, which may have been purchased by the testator, after the date of the will, and before the republication, unless there is a manifest intent, expressed in the codicil itself, to confine

the operation of the will thus republished, to the same estate which the testator held, and upon which the will operated, at the period of its first execution.

It only remains to apply these rules to the will under consideration.

Thomas Foster made his will in October 1820, duly attested to pass real estate ; and made a codicil, on the same paper, attested in like manner, on February 3, 1831, having purchased land during the intermediate period. The codicil recites the fact of having executed the will, declares the present instrument to be a codicil, directs it to be annexed to and made part of the will, and confirms the will in every thing, except where the same is thereby revoked and altered.

Whatever might be the implication from the mere fact of making a codicil, these words .of express ratification appear to us. to bring the case clearly within the authorities, making this codicil a republication.

The original will, after a provision for Hannah Newell, which is of no importance to the question, proceeds thus : — " I give and devise to my brother John Foster, one half of all my estate for his life ; — the other half, in equal shares and in fee simple, to all the children of my brother Andrew, and sister Elizabeth, respectively." The testator then gave to the same children, the remainder in the other half, expectant upon the determination of John's life estate ; and also all other estate which I have, and all right and title which I have in and to any estate, not above bequeathed and devised, to the same children, with survivorship, if either die in minority. The codicil, after the recitals, declaration and ratification already noticed, provides thus ; — I do hereby revoke and annul each and every bequest and devise made, given and bequeathed, in and by said will and testament, to the children of my sister ; — and secondly, I give, devise and bequeath all and every part of my estate, of whatever description, which is in said will and testament in any way given to said children of Elizabeth, to the children of my brother Andrew, mentioned in said will ; and then come the words of ratification, in other respects.

What then. is the effect of this codicil, regarded as a republication ? Clearly to bring the date of the will to that of the

codicil, and to give the words of the will the effect they must have as *then* used. The words " *all my estate*," which at the date of the will did not include after-purchased lands, at the date of the codicil did include them. The intent to dispose of all his property was manifested by the original will ; but the technical rule of law prevented it from operating upon lands, of which he was not then seised. At the date of the codicil, he was seised, he had the power to devise ; the continuing intent to do so, is declared by the republication and confirmation of his will ; and the intent and the power thus concurring, the devise took effect upon the after-purchased lands.

To test the effect of this republication, let us apply it to the devise to John Foster for life, in respect to which there are no restraining or qualifying words in the codicil. In the will the testator says, I give one half of all my estate to my brother John for his life. In the codicil, he says, I republish that devise ; I still declare, by repeating and confirming the terms of my former devise, that I give and devise to my brother John one half of my estate for his life. Can there be a doubt, consistently with the authorities cited, that John takes a moiety of the after-purchased estate ? We think there can be no doubt of this ; and therefore that the real question is, not whether the will was republished, nor what would be the legal effect of such republication, if unrestrained and uncontrolled by particular provisions in the codicil itself, but whether in fact, the words of revocation and devise over, in this codicil, are so expressed as to confine their operation to the estate held by the testator at the date of the original will.

The words of the will, to which the terms " revoke " and " annul" apply, are, " each and every bequest and devise, made, given and bequeathed," &c., not the estate given ; it alludes to no estate or property, but annuls the devise made. Had it stood simply upon the words of this revocation, without any devise over, it might have been plausibly contended, that to the extent of this revocation, the testator would have died intestate. If one give all his estate to seven persons, by name or by description, to take as tenants in common and not as joint tenants, (which clearly they would in this case, under the original will,) and the testator revoke the devise to three,

46 *

either by name or by description, to the extent of such revo-
cation, there being no devise over, the estate is intestate.
*Brownell* v. *De Wolf*, 3 Mason, 486. But here there is a
devise over in these words : " I give and bequeath all and
every part of my estate of whatever description, which is by
said will in any way given to the children of Elizabeth, to the
children of Andrew."

We think these words do not manifest a plain intent, or any
intent, on the part of the testator, to limit the effect and
operation of this devise over, to the very same estate which
he had, at the time of the execution of the will.

It is plain, we think, that this devise over, was intended to
be co"xtensive with the revocation before declared, of all
which by the will was in any way given to Elizabeth's chil-
dren. The effect of the republication, had it stood alone,
would have been, to enlarge the estate given to John and to
all the children, so as to include the after-purchased land.
This is its legal effect, except so far as restrained by the
terms of the codicil itself. By the terms of the codicil it was
so far restrained as wholly to annul the devise to Elizabeth's
children, and no further. To Andrew's children then, being
unrestrained, it did operate to give half the after-purchased es
tate. But for the annulling and revoking words, it would have
had the same effect, as to the part given to Elizabeth's chil
dren. What was taken from them therefore by these words,
was their share of the estate, as enlarged and extended by the
republication of the will, to include the after-purchased estate.
The general result of this view, is this ; that by the codicil,
the will was republished ; that by force of this republication,
the will was enlarged in its operation so as to embrace the
after-purchased lands ; that by this enlarged operation, without
words of restraint, the children of both families would have
taken their respective shares, in the estate thus enlarged by the
after-purchased lands ; but that by the same codicil which ef-
fected the republication, the whole power of the will, which
devised any thing to one family, was annulled and taken away,
and ceased to have any operation either to give the lands de-
vised by the original will, or the after-purchased lands, and
that by force of the same codicil, the portion of estate, which

out for these words of revocation would have gone to one family, are given to the other.

Even a more strict and literal construction of this devise over, we think, would lead to the same result. The testator says, all and every part of my estate, which is *in and by said will*, *in any way* given, &c. Now in strictness, the after-pur chased land is given by the original will. The codicil repub lishes, revives and gives new vigor to the will, without which the after-purchased land would not pass. But the words of devise, by which the estate passes, are contained in the will and not in the codicil. We think the estate devised over, was not confined to the estate which legally passed by force of the first will, but under the broader designation of " all es tate of whatever description, in any way given by said will," may be included estate which passes by force of the terms of the will, as enlarged and made effectual by the codicil, in cluding the after-purchased land.

This view of the subject, in effect disposes of the claim of the children of Mrs. Haven, as set forth in their reasons of appeal.

This claim is founded upon the assumption, that the will was republished by the codicil, that it operated as such to em brace the after-purchased lands, that the clause of revocation applied to such estate only, as the testator had at the time of the execution of the will, and that the general words of devise, made effectual by the republication of the will, were sufficient to pass a portion of the after-purchased estate to these children, and to this extent they are now entitled to claim as devisees. Such a claim seems entirely inconsistent with the manifest in tent of the testator. The argument for these appellants must establish, that it was the general intent of the testator, as mani fested by the will, to give them a portion of his estate, with the children of Andrew, that when such will was republished by the codicil, it is to be presumed that such intent continued, except so far as controlled by the express words of revoca tion, and these applied only to the estate originally held, and not to the after-purchased land, and therefore, that the devise continued in force, as to this. But we think the answer is plain, that the presumption of such continuing intent is con

trolled and rebutted by the express words of the codicil, by which each and every bequest and devise made to them is revoked and annulled   And although at this time the power to devise this after-purchased estate existed, the will and intent to do so were withdrawn by the same act which effected the republication.   The will and codicil, by the rule stated, are to be construed together, as one instrument ; and then the general rule of construction applies, that an instrument is to be so construed, as to give effect to every part, and carry into effect the general intent, if practicable.   Here the will is confirmed, except so far as it is altered or revoked by the codicil.   But to the extent of annulling every bequest and devise made to these appellants, it is altered by the codicil and so comes within the exception, and can derive no force from the words of confirmation and ratification.

There is another rule of construction, which might be re·sorted to if necessary, to carry into effect the intent of the tes·tator, though we think it is not necessary in the present case The rule is, that when two or more acts are done at one and the same time, they shall be considered as done in that order of succession, which is best calculated to accomplish and carry into effect the object intended.   As where A is seised of land, and several conveyances are made, by one instrument, or by several instruments executed simultaneously and so·connected as to form in legal effect one transaction, as by A to B, by B to C, and by C mortgaged back to A, &c.: till the execution of the deed, B has no seisin and can convey nothing to C ; but to give effect to the transaction, though simultaneously executed, A's shall be considered as first taking effect to pass the fee to B, and then B's deed to C will operate to pass the fee.   Now here two things are accomplished by the execution of the codicil.   It republishes the will, and thus extends its operation to the after-purchased estate ; and it revokes and annuls every devise to certain of the devisees.   Now considering it to be the manifest intent of the testator, that the revocation should be coëxtensive with the devise, so as to withdraw by the one, all which was before intended to be given by the other, we see no difficulty in applying the rule in question, and considering that the republi

cation shall first take effect, so as to extend the operation of the will to the after-purchased estate, and then the revocation, by which the devise thus enlarged, is revoked and annulled so far as it was given to the children of one family ; and by the devise over the same portion of the estate, thus enlarged by the republication of the will, is devised to the children of the other family.

On the whole, we are of opinion, that in the present case, the will was republished by the codicil ; that it contained words sufficient to embrace all the testator's estate, held at the time of making the codicil, which, as appears from the case, was all the testator's estate ; that of course no part of his property descended as intestate estate ; and therefore, that the appeal of Samuel Haven and wife, who claim as heirs at law, must be dismissed.

We are also of opinion, that the clause of nullification and revocation, contained in the codicil, extended to the whole of the testator's estate, as well the after-purchased lands as the estate held at the time of the date of the will ; that the whole of the estate originally devised to the children of Elizabeth Haven, was by the codicil devised to the children of Andrew Foster ; that the appellants Samuel F. Haven and others, took nothing by devise under the will and codicil, and that the'r appeal must be dismissed