* Parsons, C. J.
Henry Jackson made his last will [ * 150 ] on the 13th of January, 1805, in which he makes the following dispositions of his estate: —
First. After all his just debts and funeral charges are paid, he gives to such of his nephews and nieces as may survive him, fifty dollars each. Also he gives to his sister Susanna Gray, in fee, certain specific real estate, on condition that she does not demand against his estate her portion of her father’s estate remaining in his hands; and his executors are to hold the real estate, thus devised her, upon the same trusts as he held her said portion.
Also, he gives to Mrs. Hepzibah C. Swan, in fee, all the remaining part of his estate, real and personal, of which he might die seised, or which might afterwards descend to him, by gift, grant, as heir at law, or otherwise, to be held in trust by his executors, for her sole use and disposal.
And he appoints Judah Hays and Flisha Sigourney his executors. Mrs. Swan, the residuary legatee, and also the heirs at law, are before us.
The testator was seised of other real estate than that specifically devised to Mrs. Gray, when he made his will; and he afterwards acquired other real estate, which, on his death, without a república-" tian of his will, descended to his heirs.
It appears that the personal estate, left by the deceased, is insufficient to pay all his debts. — The heirs contend that the lands, which would pass by the residuary devise to Mrs. Swan, shall first be applied to the payment of the debts, before the descended lands can be called for. — On the other side, Mrs. Sioan and the executors, who are her trustees, insist that the descended lands are first to be appropriated to the payment of the debts.
Whether we are authorized, on this petition, to marshal the assets, and if we are, in what manner they are to be marshalled, are the questions before the Court.
*The case may at first be considered as at common [* 151 ] *124 law, and according to the equitable rules established for marshalling assets, where there is a will.
At common law, the lands of a testator are not assets, in the hands of the heirs, for the payment of any but specialty debts, where the heir is expressly bound by the contract. And his lands are not bound for the payment of any of his debts in the hands of a devisee, unless charged by the testator, either generally or specially, in his will. To prevent the injustice of the testator in devising his lands without charging them with the payment of his debts, the statute of 3 & 4 W. & M. c. 14, was passed, by which the lands in the hands of a devisee are made assets for the payment of debts due on specialties. Since that statute, all the lands of the testator, whether they descend or are devised, are charged by law with the payment of creditors by specialty, who may also resort to the personal estate. But creditors by simple contract can avail themselves only of the personal estate, and of such of the lands as are charged in the will with the payment of debts; unless when they take the place of creditors by specialty, who have been paid out of the personal estate. These rights of the creditors remain uncontrolled by any provisions which a testator can make.
But as between legatees and devisees who claim under the will, and the heirs who can take only what the testator has not given away, he may regulate the funds, out of which his debts shall be paid; by which regulations they will be bound.
And the general rule in equity for marshalling assets is thus settled : — 1. The personal estate, excepting specific bequests, or such of it as is exempted from the payment of debts. — 2. The real estate which is appropriated in the will as a fund for the payment. — ■ 3. The descended estate, whether the testator was seised of it when the will was made, or it was afterwards acquired. — 4. The u rents and profits of it, received, by the heir after the tes- [ * 152 ] tator’s death. — * And, 5. The lands specifically devised, although they may be generally charged with the payment of the debts, but not specially appropriated for that purpose And this rule is executed by a decree in chancery, according to the rights of the parties respectively interested. (1)
The laws of this commonwealth, applicable to this subject, may next be considered. — And here all the personal estate of the testator, and all the real estate, of which he died seised, whether devised or not, are assets for the payment of all his debts, whether due by simple contract or by specialty. (2) Also by the statute of *125 783, c. 24, § 10, all estate, real or personal, undevised in any will, shall be distributed as if it were intestate, and the executor shall administer upon it as such.
A question has been made, whether the executor must take out administration on such undevised estate, or whether he shall administer it, ex officio, as executor. The usage has been to administer it without a letter of administration ; and we are satisfied that this usage is correct. There can be no benefit to any person, from having two accounts opened by the executor in the probate office and the natural construction of this section supports the usage For the executor, by the probate of the will, has the administration of the testate estate, according to the will, and on undevised estate he is also directed to administer agreeably to the provisions respect_ng intestate estate.
According to the strict rules of law, there can be no undevised personal estate in a will, where an executor is appointed; for he has all the personal estate, whether acquired before or after the will, in trust, — first, to pay the debts, and then the legacies; and if any remained, it was his own, unless the testator, by his provision for the executor, had excluded him from it; in which case he was trustee of the remainder for the next of kin.
As questions frequently arose, whether the executor was excluded from the residue or not, the section of the statute above cited removed all doubt; and the executor is * now, in [ * 153 ] all cases, trustee of the undisposed residue for the next of kin.
As to the distribution of undevised lands, this section is merely affirmative of the common law, which gives to the heir all undevised estate. But by the obligation imposed on the executor to administer it as intestate estate, it becomes assets in his hands for the payment of the testator’s debts ; and it may be sold by the exec utor, on license for that purpose, or a creditor may take it in execution.
There is another provision, applicable to this subject, in the 18th section of this statute, where it is enacted, that whenever a testator in his will shall give any chattels or real estate to any person or persons, and the same shall be applied to satisfy the debts of the testator, all the other legatees, devisees, or heirs, shall refund their proportionable part of such loss, and contribution may be compelled by suit.
From this view of our statute provisions, it is manifest that a testator cannot, by any dispositions in his will, affect the rights of creditors, who may, if their debts are not discharged, enforce satisfaction by the levy of their executions on any estate, which was the *126 testator’s at his decease; the whole of it being assets in the hands of the executor. But it is also manifest that the testator may bind, by his dispositions, his legatees, devisees, and heirs.
Hence result the right and duty of the Court, in the due exercise of its jurisdiction, so to marshal the assets, that as little interruption be given to the interests of the claimants under the will, and of the heirs, as may consist with the more perfect rights of creditors. This can be done only by a designation in the license of the estate, which the executor may sell for the payment of debts. And when the testator, or the law, has appropriated an adequate fund for the payment of the debts, it would be unreasonable for the Court to permit that fund to lie by, and to license an executor to sell a specific devise, and thus drive the specific devisee to his action at law, for relief out of the appropriate fund.
[* 154] *In what manner the assets are in this case to be marshalled, is the next question. And in our opinion, the rule established in equity, in cases where all the debts are due by specialty, is applicable in this case, except as it relates to the rents and profits of the descended estate, received after the testator’s death, which we. cannot come at. For in those cases, the whole estate, personal and real, as well the devised as the descended lands, are assets for the payment of all the debts. So here the whole estate of Jackson, the testator, including the descended real estate, is assets for the payment of all his debts, in the hands of his executors. And in both cases the charge on the estate is by operation of law.
In this will there is no specific bequest of any chattel, and no exemption of any part of the personal estate from the payment of debts. Therefore the whole of the personal estate, after the payment of the expenses of the last sickness, funeral charges, and of the debts due to the government, (if any,) is first to be applied to discharge the debts. It is also very clear, that the devise of lands to Susanna Gray is a specific devise, not liable, by the terms of it, to any deduction. The descended estate must then be applied to the payment of the debts, before the specific devise can be resorted to. And the same rule must apply to the lands which Mrs. Swan can claim as residuary legatee, if the devise of those lands can be considered as specific within the intention of the rule.
Jackson first provides that his debts and funeral charges be paid. He next bequeaths legacies to his nephews and nieces, and makes a specific devise to his sister Susanna Gray. Then he gives to Mrs. Swan, in fee, all the remaining part of his estate, real and personal; the just construction of which is, “ when my debts and funeral charges, and the legacies, are paid, and the specific devise to my *127 sister is deducted, then what remains, whether real or personal, I devise in fee to Mrs. Swan.” If nothing should remain, then nothing is devised to her.
* We cannot, therefore consider this devise of the re- [ * 155 ] mainder as specific. It is rather creating a fund for the payment of the debts and legacies, with a devise of what remains, if any, to the residuary devisee. If, after the personal estate was exhausted by the debts, the unsatisfied creditors should levy their executions on all the devised lands, excepting those specifically devised to Mrs. Gray, Mrs. Swan could not compel contribution by Mrs. Gray and the heirs, under the statute, because a general residuary legatee cannot have contribution, if nothing remains. For in that case nothing is given to him, but on a contingency tho* some estate may remain ; and if no estate shall remain, then nothing devised to him is taken from him, to satisfy a creditor of the testator. The debts and legacies, being first to be paid, are to be considered as a deduction from the property contemplated to be given; and if, after the deduction, there is no remainder, the contemplated bounty has wholly failed, there being, in fact, no object on which it could operate.
Thus, when the testator, after mortgaging lands, devised them, with a clause, that the devisee pay off the mortgage, he can resort to no other part of the estate for relief; but the money secured is considered as a deduction from the property devised. (3) But the case of King vs. King Sp Al. (4) is in point. There the testator, being seised of freehold lands, and of a copyhold, which last he had mortgaged, devised the copyhold to his nephew ; and after all his debts were paid, he devised the rest of his estate, real and personal, to his son, who was his heir. And it was holden that the import of this devise was, that until all the debts were paid, nothing was devised to the son ; or that when the debts should be paid, then, and then only, he should be entitled to the residue. We cannot, therefore, consider this residuary devise to Mrs. Swan as specific, within the rule of marshalling assets, so that the descended lands shall first be sold.
* It has been argued by the counsel for the petition- [* 156 ] ers, admitting the rule to be generally correct, yet that
in this case it ought not to apply, because in the residuary devise the testator gives, not only all his real and personal estate, of which he was then seised and possessed, kut all of which he might after-wards die seised ; and, therefore, that he contemplated after-acquired estate, which, although it could not pass by his will, yet was ev¡ *128 dently intended to pass; and that this intent ought to be so far executed as to cause it to be sold for the payment of debts, before the residuary devise should be applied for that purpose.
Otis and Sullivan for the petitioners.
Prescott and Jackson for the respondents.
This argument, however ingenious, is not solid. For the testator cannot, in his will, charge with the payment of his debts after-purchased lands, any more than he can devise them. And if in this case he intended it, the intent was void. And an intent against law cannot affect this rule or principle of law. Otherwise the rights of the heirs would be implicated by a testamentary disposition, made before the lands were acquired by the testator. If this case should be allowed as an exception, it would involve most residuary devises ; for it is common for the scrivener to include expressly all the residue of the estate, of which the testator may die seised or possessed. We think, therefore, that the rule should be applied in this case, without admitting the exception.
The order of the Court was entered as follows: —
Ordered that the said executors be, and they hereby are empowered and licensed to raise the sum of by sale at public auction of the houses, lands, or tenements, of which the said Henry Jackson died seised in fee, being devised by him by his last will and testament; excepting such part thereof as is therein devised in trust for his sister Susanna Gray, and such as may have been held by said Jackson to the use of, or in trust for, any other person or persons ; the said sum, when raised, to be applied to the pay- [ * 157 ] mentof the debts aforesaid, with the incidental * charges of sale; and if the said sum cannot be raised by such sale, it is further ordered, that the said executors may raise by sale at public auction of so much of the real estate of which the said Jackson died seised, not having devised the same in and by his last will and testament, such further sum of money, as with the money raised by the sale first above ordered, will amount, in the whole, to the said sum of to be applied as aforesaid, giving bond, &c.

 2 Brown’s Cases in Chancery, 257, Donne vs. Lewis. — Ibid. 259, Davis vs. Topp

 Stat. 1783, c. 32, § 1 and 7.

 2 Brown’s Ch. Ca. 257.

 3 P. Will. 358. — Ibid. 96, Harris vs. Ingledew