MARY BALLARD *et al. versus* THOMAS CARTER.

A mortgage held by a testator before the making of the will and until his decease,
   will pass under a residuary devise of "all his estate, whether real or personal."
If a testator, after devising a mortgage, forecloses or takes a release of the equity of
   redemption, it is a revocation of the devise.
Where a testator, after devising a mortgage, took an absolute deed, cancelling the
   mortgage and paying the mortgager the difference between the debt and the value
   of the land, it was held to be a new purchase, upon which the will did not operate.

THIS was a writ of entry, in which the demandants counted
upon their own seisin of one sixth part of certain land, and a
disseisin by the tenant.

Upon a case stated it appeared, that one Wier, being
seised in fee of the land, conveyed the same, on the 31st of
October, 1815, to John Ballard, since deceased, in fee and
in mortgage, to secure the payment of 3800 dollars in three
years and interest semi-annually ; and that on the 31st of
July, 1816, Wier made a second mortgage of the same land
to Ballard, to secure the payment of 400 dollars in two years
and three months, with interest annually.  Prior to the 15th
of March, 1819, conversations were had between Ballard and
Wier relative to the purchase and sale of the land, which re-
sulted in a verbal agreement that Ballard should give and Wier
receive 7500 dollars therefor.  No deed or writing was made
until the 31st of March, 1819, when Wier executed and
delivered to Ballard a deed of the land, in fee, with cove-
nants of warranty, the consideration expressed being 7500
dollars.  The amount of money then due upon the notes
mentioned in the condition of the mortgage deeds, was de-
ducted from the price of the land, and the notes, with the
balance in money, were delivered to Wier.  The deeds of
mortgage were never released on the records, nor otherwise
cancelled, but remained in Ballard's hands until his decease,         113
and are now in the hands of his executors.

On the 15th of March, 1819, Ballard made his will, con-
taining the following devise : — "*Item*, I give to my aforesaid
sons John Ballard and Joseph Ballard, and my daughter Sally
Carter," (the wife of the tenant,) "all my estate, whether
real or personal, that may remain after my gifts and bequests

Ballard
v.
Carter

and devises above made have been paid and executed ; to have and to hold to them, their heirs and assigns for ever."

The testator died seised in fee of the land in question, in 1824 ; and ever since his death the tenant has been in possession, having purchased the estate which the sons, John and Joseph, had in the land, and he claimed in behalf of himself and wife, the entire and exclusive title to the same. The testator had six children, two of whom died in his lifetime. The demandants were the only issue of one of these deceased children.

The question submitted to the Court was, did John Ballard die testate or intestate in respect to the demanded premises ?

March 27th.    B. Sumner and Porter, for the demandants, cited 1 Roberts on Wills, 93 ; 1 Pow. on Mortg. 457, 458 ; Casborne v Scarfe, 1 Atk. 605 ; Thompson v. Grant, 4 Madd. Ch. R. 438 ; Mʿ Kinnon v. Thompson, 3 Johns. Ch. R. 310 ; Goodwin v. Richardson, 11 Mass. R. 473 ; Smith v. Dyer, 16 Mass. R. 23 ; — 1 Rob. on Wills, 251, 255, 294 ; 4 Dane's Abr. 573 ; 6 Cruise's Dig. 105, tit. Devise, c. 6, § 48, 57, 61 ; Darley v. Darley, Dick. 397 ; Walton v. Walton, 7 Johns. Ch. R. 272.

Sohier, for the tenant, cited Att. Gen. v. Vigor, 8 Ves. 256 ; Broome v. Monk, 10 Ves. 605, 613 ; Biddulph v. Biddulph, 12 Ves. 161 ; Rashley v. Masters, 1 Ves. jun. 201.

The opinion of the Court was drawn up by

Aug. 1827,    PARKER C. J.    The demandants claim one sixth part of
at Taunton. the tenement described in the writ, by descent from John Ballard, their grandfather, who died seised thereof ; and they have a right to recover according to their demand, unless the same passed by the will of John Ballard to Sally Carter, wife of the tenant, and to John and Joseph Ballard, by the residuary clause in the will. The tenement demanded had not been devised, except by this residuary clause, and provision was made by legacy or devise, for all his children and grandchildren, in the will. So that if this were his estate at the time of making the will, as it was at the time of his death, there is no doubt it would have passed to the residuary devisees. The objections to the title under the will are, to be sure, of a technical character, but the rules on this subject have

oeen too long established to allow us to depart from them in order to seek for the probable intent of the testator.

Without doubt, in most instances of wills which purport a disposition of the whole estate of the testator by particular bequests and a general residuary clause, it is intended to dispose of all of which the testator is the owner at the time of his death, without distinguishing between that real estate which he may own at the time of making the will, and that to which he acquired a title afterwards ; and yet the rule is explicit and inflexible, that real estate acquired after making the will goes to the heirs as undevised estate ; and this rule seems to have been founded on the interest which the law always takes in heirs, otherwise the same rule would apply to subsequent acquisitions of personal estate.[1]  The claim of the devisees therefore must be tried by this rule, and must stand or fall as it may be affected by it.  If the title of the testator under the deed of Wier, which was executed on the 31st of March, 1819, is to be considered distinct from and independent of the mortgage of the same premises, which he previously held, then it is clear that it is undevised estate But as the testator was mortgagee of the same premises under a deed from Wier, which was executed long before the making of the will, and continued to be mortgagee after the making of the will, down to the time of the execution of the absolute deed, a question somewhat of an intricate nature arises as to the operation of the will under these circumstances.  In settling this question we must reject the treaties and conversations which are stated in the case, as they can have no legal effect on the title of the testator under the deeds, parol evidence being wholly inadmissible in that view.

Now with respect to the mortgage, we think the right of the testator would have passed to the devisees under the general clause, if it had continued in the same form to the

<div style="margin-left:70%">Ballard<br>*v.*<br>Carter.</div>

---

[1] See *Hays* v. *Jackson*, 6 Mass. R. 149.  The law of Massachusetts on this head has been altered by statute, so that any estate, right or interest in .ands acquired by the testator, after the making of his will, shall pass thereby in like manner, as if possessed at the time of making the will, if such shall learly and manifestly appear by the will to have been the intention of the .estator.  Revised Stat. *c.* 62, § 3.

time of his death ; for whether this conveyance is to be considered a mere pledge or security for money, or as giving a title to land so as to constitute real estate in the hands of the testator, it must be considered as devised under the words, "all my estate, whether real or personal, which may remain," &c. This, however, according to some of the authorities, might be questioned. In 3 Ves. jun. 348, it was determined, that the legal estate of a mortgagee in mortgaged premises did not pass by a general residuary devise of all his *estate and effects whatsoever and wheresoever.* So in 1 Atk. 605, it was decided, that by a devise of all lands, tenements and hereditaments, a mortgage in fee should not pass. But in 2 P. Wms. 198, it is held, that a devise by a trustee of all the rest of his real estate, will pass the trust estate, and in the note of Butler to Co. Lit. 203, (note 96,) it seems to be considered by that learned editor, that a mortgage will pass under such a devise, and the cases of *Marlow* v. *Smith,* 2 P. Wms. 198, and *Attorney- General* v. *Philips,* are cited. It would be a fruitless task to go over all the cases in the English books on this subject, with a view to reconcile them. It is enough for us, that under the terms of the residuary clause in this will, it being expressly a devise of both real and personal estate, we are satisfied that this estate would have passed, had it remained unchanged until the death of the testator.[1]

But then the case is met by another objection not less formidable, which, if not surmounted, is fatal to the title of the devisees. If the mortgaged estate is to be considered as at an end, and the mortgage discharged or cancelled on the 31st of March, when the notes were given up and the absolute deed given, then clearly there was a new purchase, and according to the first proposition, which we suppose is not disputed, the estate is undevised. But admitting that the interest conveyed by the mortgage continued, so that the absolute deed is to be considered as a purchase of the equity of redemption only, operating by way of release, so that the

---

[1] See Ram on Assets, 424, *et seq;* Ram on the Exposition of Wills, 202 203; 4 Kent's Comm. (3d ed.) 311, n. c; *Jackson* v. *Delancy,* 13 Johns. R 537; *Woodhouse* v. *Meredith,* 1 Merivale, 450.

utle is now held under the two deeds, this will not remove the difficulty, for according to the authorities, this would be a revocation of the devise of the mortgage, supposing that to nave passed under the will. On this subject of revocation there seems to have been an excessive degree of refinement in the English books, as well as some contradiction; and so ·t has been thought by Lord Chief Justice *Eyre* and Lord *Mansfield*, as appears in the case of *Goodtitle* v. *Otway*, 1 Bos. & Pul. 576, and the case of *Swift* v. *Roberts*, 3 Burr. 1491. Still one principle runs through all the cases, and is admitted by all the judges, as well those who quarrel with, as those who support the doctrine of revocation to the extent to which it has been carried, and that is, that the devisor must be seised of the same estate at the time of his death, that he was seised of when he made his will, to make it a good devise. In other words, that any alteration in the estate after the making of the will, amounts to a revocation. Lord C. J. *Eyre* admits this in his very able argument in the case of *Goodtitle* v. *Otway*, in which he combats with great force the opinion adopted by the other judges of the Court of Common Pleas and by the Court of King's Bench on error. And Lord *Mansfield*, though he considers the doctrine of revocation to have been carried to an inconvenient, if not an absurd extent, admits the same principle. *Doe* v. *Pott*, 2 Doug. 722. In assenting to this doctrine, we would understand by *any alteration* of an estate, a material alteration; one which changes the nature and effects of the seisin of a testator; for there are some cases in the books, which we should not incline by anticipation to adopt as law here, especially as some very eminent judges in England think that a very harsh doctrine is established by them. To say that alterations for the express purpose of giving effect to wills should be held a revocation, as is laid down in Cruise's Dig. *tit. Devise,* c. 6, § 48, *et seq.*, appears somewhat paradoxical. So of the conversion of an estate tail into a fee by common recovery, the testator supposing, when he made his will, that he had a fee; so of parting with an estate, though but for an instant, and taking back the same estate; all which are held to be revocations; and even the conveyance of an estate to another

117

Ballard
v.
Carter.

to the use of the testator, which in fact gives him the same estate he had before. These are all cases which may require consideration, if they should arise here.

The general principle, as laid down by *Ashhurst* J. and the rest of the court, in the great case of *Goodtitle* v. *Otway*, 7 T. R. 419, is, that in order to dispose of an estate by will, it is necessary that the party devising should have the ownership of the land in him at the time of making the will, and that there should be a continuance of the same interest till the time of the death of the devisor, when the will is to take effect. This then is the rule by which this case must be settled.

Previously to the 15th of March, 1819, when the will was made, the testator was seised in fee, but in mortgage, of the estate demanded. He continued so seised until the 31st of March, when he purchased out the mortgager, by cancelling his debt and paying him the residue of the agreed value, and took an absolute deed. The mortgage deed remains uncancelled, but the notes given as collateral security were given up. There are two lights in which this may be viewed, either as a new title arising under the last deed, or as a foreclosure by a purchase of the equity of redemption, so that the absolute deed would operate as a release. If the first character is attributed to it, then clearly the will did not operate on the estate, for it was a new acquisition ; if the second, then, according to the authorities, there is such a change in the estate as amounts in law to a revocation of the devise of the mortgage. We think the authorities are clear and decisive on this point. "If a mortgagee," says Roberts on Wills, "after making his will, forecloses the mortgage, or obtains a release of the equity of redemption, the mortgaged lands will not pass inclusively, ui.der the general words, lands, tenements, and hereditaments, contained in the will, but will go as an *acquisition* or *purchase* subsequent to the will, to the testator's heir at law." 1 Roberts on Wills, 93, cites 1 Atk. 605, — 2 Vern 621, — 1 Vern. 3, — 2 Vent. 351, — 3 P. Wms. 62, — Co. Lit. 203 *b*, n. 96, — 3 Ves. jun. 348, — 4 Ves. jun. 147. This passage in Roberts probably is grounded upon the prin

ciple laid down in the books cited, that mortgaged .ands not passing under the general residuary clause, the devise is not aided by the subsequent acquisition of an unconditional estate, and therefore may not strictly be founded on the doctrine of revocation. But there are other cases which go strongly to maintain the position, that any change of the estate of much less importance than the conversion of a mortgage into an unconditional estate, operates in law as a revocation. Lord *Hardwicke*, in the case of *Sparrow* v. *Hardcastle*, 3 Atk. 798, lays down the principle broadly, that the devisor must have an estate in the land devised, and the estate must remain in the same plight until his death, for the least alteration by any act of his, makes it a different estate, and therefore is an actual revocation. In 3 P. Wms. 166, is the case of *Marwood* v. *Turner*, which is a strong illustration of this principle. J. S., having a lease for three lives, devises it, and afterwards surrenders the lease and takes a new one to him and his heirs for three lives. This was held to be a revocation of the devise. So in the case of *Abney* v. *Miller*, the testator devised a leasehold estate under Magdalen College, and after making his will, renewed his lease by surrendering the old one and taking a new one. This was held to be a revocation, there not being any thing which amounted to a republication. This case is reported in 2 Atk. 593. A vast many other cases of a like nature may be found, but .t is unnecessary to cite them, they all maintaining the principle, that a change of the estate after making a will is a revocation.

The case before us presented much stronger features of change, than those which have been cited, or others in the books. The testator, at the making of the will, had only a mortgage upon the estate, to secure a debt of about one half the value. After making the will, he cancels the debt, takes a deed without condition, paying the difference in value between the debt and the estate. The mortgage, though not in fact cancelled or destroyed, must be considered as sunk or merged in the absolute conveyance ; and this was an entirely new purchase, which seems to have no legal connexion with the mortgage. If it had.

119

Ballard
v.
Carter.

and the mortgage were still in force, the acquisition of an indefeasible estate would be a revocation, according to the authorities.

The cases cited by the tenant's counsel go principally to show, that where the testator, having a contract for the sale of land to him, which may be enforced in equity, devises the land and then obtains a legal title, the devise will hold. This is undoubtedly true, but upon the principle, that in equity what is contracted to be done is considered as done, and that in truth there is the same estate before and after the legal title passes. There is no contract however on the part of the mortgager, that he will sell the land to the mortgagee. It is true, that by the nature of the contract, there is a right to acquire a legal estate upon foreclosure ; but that foreclosure is deemed a new acquisition. In this case the devisees do not stand so well as they would upon a foreclosure by the testator after making his will ; for the transaction of the 31st of March can be viewed in no other light than as a new purchase at that time.[1]

*Tenant defaulted.*

---

[1] See *Southerin* v. *Mendum*, 5 N. Hamp. R. 430.