CHARLES YEOMANS & another, Executors *vs.* MARVIN BROWN & another.

When an executor petitions the court of probate for license to sell real estate of which his testator was disseized at the time of his death, for the purpose of paying his debts, the disseizor in possession is not interested in the estate, within the meaning of the Rev. Sts. *c.* 71, § 8, and therefore is not entitled to notice of such petition, in order to render valid, as against him, the license to sell such estate and to enable the executor to maintain an action against him, on § 12 of that chapter, to obtain possession of the land of which he disseized the testator. Nor is it necessary, in order to render the license valid for such purpose, that the executor, in his petition therefor, should set forth the value of the real estate, though it is necessary to sell only a part thereof; nor that the court should decide and direct what specific part thereof shall be sold.

WRIT OF ENTRY, brought by the executors of the last will of Joseph Kingsbury, to recover two tracts of land in Webster. The writ averred that the said Kingsbury was seized of the demanded premises, in his life time, and had good title thereto, but died disseized thereof. The demandants counted on their own seizin, as executors, and a disseizin by the tenants. The action was brought on the following provision of the Rev. Sts. *c.* 71, § 12 · "If the executor or administrator shall sell any

lands fraudulently conveyed by the deceased, or any to which he had a right of entry or action, the executor or administrator may first obtain possession thereof by entry or by action, and may sell the same at any time within one year after obtaining such possession."

At the trial before the chief justice, the demandants, aftei giving evidence of the testator's title to the demanded premises, introduced an attested copy of their petition to the court of probate for license to sell the testator's real estate, and also of the following license thereupon granted by that court: "At a court of probate holden at Worcester on the 1st Tuesday of April 1843. On the petition of Patty Kingsbury and Charles Yeomans, executors of the will of Joseph Kingsbury, late of Webster, deceased — notice thereof having been duly given — ordered that said petitioners be licensed to sell so much of the real estate of said deceased, for the purpose of paying debts and charges of administration, as will raise the sum of $2787·31 : The said petitioners taking the oath, giving public notice of the sale, and in all respects proceeding therein in the manner prescribed by law.           Ira M. Barton, Judge of Probate."

It was represented, in the petition on which said license was granted, that the debts which the testator owed at the time of his death, taxes, charges of administration, &c., and the allowance made to his widow out of his personal property, exceeded the appraised value of that property by the sum of $2787·31 The description of the real estate of the testator, contained in said petition, the prayer of said petition, and the acknowledgment of notice by the guardian of the testator's minor children, were as set forth in the margin.*   It appeared by the petition that it

---

* "The real estate of said deceased is situated in said Webster partly, and partly in Oxford in said county; a part of which consists of about 270 acres of land with the buildings thereon, whereon Marvin Brown and Philip Brown now live, in said Webster, lying in two tracts; the one is bounded westerly by the Great Pond and land of the heirs of Samuel Slater, and land of John Rawson; northerly by lands of said Rawson, said heirs, and· Ezra Wallis; easterly by lands of Samuel Rawson, Ezra Wallis, and said heirs; southerly by the Barnard Lot (so called) and the brick yard farm, now belonging to Doctors Negus and Tenney; containing 208 acres more or less, as by the title deeds of said deceased thereto will appear. And the other of said tracts is bounded

bore date on the same day on which the license was granted, and that no notice was given, and no acknowledgment of notice, by persons interested, was signified, except that of Patty Kingsbury, one of the petitioners, as guardian of her three minor children ; she being the testator's widow, and they all his minor children.

After the foregoing evidence was introduced, the counsel for the tenants took an exception, in the nature of a motion for a nonsuit, and insisted that, upon the demandants' own showing, they had not brought themselves within the Rev. Sts. *c.* 71, and had no right, as executors, to maintain this action.   1st. Because, as the petition described lands of which the testator died seized, and others of which he died disseized, it was manifest that other persons, being seized, were interested, and therefore that personal notice should have been given to them, or public notice to all persons interested, fourteen days before the granting of the license to sell.   Rev. Sts. *c.* 71, § 8.

2d. Because the petition did not set forth the *value, descrip tion and condition of the respective parcels of the estate of*

---

northeasterly by land of the heirs of said Slater; southerly, westerly and northerly, by said pond, containing as by said deceased's title deeds thereto, 70 acres, more or less :  Of all which real estate, described as aforesaid, belonging to said two tracts, said deceased died disseized, leaving rights of entry and of action to his heirs, &c. for the recovery of the same, as by law in such case made and provided.

"The homestead farm of said deceased, situated in said Webster, consisting of mowing, tillage, pasture, orchard land and woodland, containing in the whole about 80 acres, with a dwelling-house and barn and out-buildings thereon. Also a small lot of woodland situated in the north part of Webster aforesaid, containing about two acres 1 qr. and 7 rods.  Also a cedar swamp lot of land lying the northwest side of the Great Pond in said Webster, containing two acres.  Also one undivided half of another lot held in common with Elisha Kingsoury, situated in the southerly part of Oxford, containing in the whole about 27 acres, and consists of pasturing and woodland.

"Wherefore your petitioners pray your honor to authorize them to sell so much of the hereinbefore described real estate, including the said 270 acres first hereinbefore described, as will raise the aforesaid sum of two thousand seven hundred and eighty seven dollars and thirty one cents for the purpose of paying debts and charges of administration.

"Webster, April 4th 1843.                    Patty Kingsbury,
                                             Charles Yeomans

which the testator died seized, and that of which he died dis-seized, so as to enable the court to decide and direct what specific part of the estate should be sold, as well as to give notice to parties interested. Rev. Sts. *c.* 71, § 3.

3d. Because, as it appeared, by the petition and license, that the whole of the real estate liable for the payment of the testator's debts was not necessary for the payment thereof, the decree of the court should have decided and directed what specific part of the estate should be sold, and not have licensed the executors, in general terms, to sell so much as should be necessary, including the estate of which the testator died seized with that of which he died disseized; thereby leaving at their election to sell the one or the other; such decision and direction of the court of probate being requisite, among other things, to enable any party aggrieved to appeal from such decision.

The chief justice being of opinion that these objections, or some of them, were decisive against the demandants' right to recover, advised a nonsuit, (which was entered,) and reserved the question for the consideration of the whole court.

*Bacon*, for the demandants. By the Rev. Sts. *c.* 71, § 11, the real estate of a deceased person, which is liable to be sold for payment of his debts, includes all lands to which he had a right of entry or action; and by § 12, his executor, &c. when licensed to sell such land, may first obtain possession of it by entry or action. The question in the case at bar is, whether the demandants have obtained a valid license to sell the demanded premises.

The probate court had jurisdiction; the proper parties petitioned for the license; the amount of debts and charges, and the value of the personal estate, were set forth; and the real estate was properly described. It is objected, however, that the *value* of the real estate was not set forth in the petition. But the provision, in Rev. Sts. *c.* 71, § 3, for setting forth the value, relates only to cases in which it appears that it is necessary to sell part only of the real estate, and is only allowed, and not required even in such cases. It does not appear from the petition that all the testator's estate was not necessary to pay his debts. By § 5, the value of the real estate is directed to be set forth in a certifi

cate from the judge of probate, when the petition for license to sell is presented to the supreme judicial court. But when the petition is to the judge of probate, the value need not be stated therein ; for he has the means of knowing the value, from the inventory filed in his court. See *Drinkwater* v. *Drinkwater*, 4 Mass. 357.

It is objected that all persons interested in the estate had not notice of the petition, as required by Rev. Sts. *c.* 71, § 8. But the tenants were not "interested in the estate." It appears from the petition that they are mere disseizors ; and it does not appear that any person, who had no notice, was interested. A tenant in common has no right to notice that the estate of his cotenant is to be sold. "The estate," in § 8, means the estate to be sold, or the estate of the deceased. None are entitled to notice besides those whose rights and titles are to be concluded by a sale under the license. See *Jenness* v. *Robinson*, 10 N. Hamp. 215. A judge of probate has no authority to try the question whether the deceased fraudulently conveyed his estate, or was disseized thereof. Therefore, a disseizor is not entitled to notice ; for notice is required for the purpose of enabling a party to show cause, and be heard. And where a party is heard, a decision must be made.

The demandants are entitled to a new trial, if they can, in any supposable case, recover of the tenants ; and are not to be sent back to the judge of probate.

But suppose other persons, not the tenants, were entitled to notice of the petition, and did not receive it ; yet the tenants cannot take advantage of such want of notice.

By Rev. Sts. *c.* 71, § 40, if the validity of a sale of real estate, by an executor, shall be drawn in question by persons claiming adversely to the title of the deceased, or under a title not derived from or through him, the sale shall not be held void on account of any irregularity in the proceedings, provided the executor was licensed, by a court of competent jurisdiction, to make the sale, and executed and acknowledged in due form a deed for the conveyance of the premises. This section authorizes executors to do, indirectly, what the present demandants have

done directly. It seems therefore that what they have done is not void.

*Washburn,* for the tenants. Whatever the testator's rights to the demanded premises were, those rights descended to his heirs, who may recover the same, unless they are wanted for the payment of his debts. Executors, in selling land for payment of debts, exercise a sta utory power only, and unless that power is exactly executed, they can pass no title. In the present instance, it does not any where appear that the land, of which the testator was disseized, was necessary for payment of his debts; and the license to sell was not valid, because no such proceedings were previously had, as authorized the adjudication made by the judge of probate. The petition was defective in not stating the value of the real estate; and the decree of license was invalid, because it contained no decision nor direction what specific part of the estate should be sold. Rev. Sts. *c.* 71, § 3. It was also invalid, because previous notice was not given to all persons interested in the estate, as required by § 8 of the same chapter. *Chase* v. *Hathaway,* 14 Mass. 222. *Smith* v. *Rice,* 11 Mass. 507. The tenants were interested in the estate, and might, under § 9, have given bond to the demandants to pay the testator's debts, and thus have prevented the grant of the license.

The heirs of a fraudulent grantor cannot recover the land conveyed by him; yet, on the demandants' doctrine, they may do so indirectly, by the executor's selling such land for payment of debts, and by their retaining other lands of their ancestor.

WILDE, J. It was proved at the trial, that the demandants had been licensed by the court of probate to sell so much of the testator's estate as would raise the sum of $2787·31, for the payment of debts and charges of administration. The action was brought before making any sale, and is founded on the Rev Sts. *c.* 71, § 12, which provide that an executor or administrator, licensed to sell any lands, fraudulently conveyed by the deceased, or any to which he had a right of entry or of action, may first obtain possession thereof by entry, or by action, and may afterwards sell the same.

Several objections were made by the tenants to the sufficiency and validity of the license, and the case was reserved for the consideration of the court on these objections. The first and principal objection is, that the license was granted without notice to the tenants, who were in possession of the premises, having a title thereto by disseizin, as alleged in the writ, and so were entitled to notice of the demandants' application for the license. But we are of opinion, that according to the true meaning of the Rev. Sts. *c.* 71, § 8, no such notice is required. The statute requires that no such license shall be granted, until notice shall have been given " to all persons interested in the *estate.*" The word " estate " does not mean the land to be sold, but the title of the testator. This is the strict meaning of the term. It denotes the interest a party has in lands, tenements and hereditaments; as an estate for life or in fee, &c. It is true that it is sometimes used loosely, by way of description, as denoting land But we cannot consider it as intended to be so used in the statute. It cannot be supposed that the legislature intended to au thorize a stranger to the testator's title to interpose objections to the settlement and disposition of his estate. The tenants are alleged to be in possession wrongfully and by disseizin, which negatives their having any right and title derived from the testator. If they had a title under a fraudulent conveyance from the testator, they might have been entitled to notice, as such a title would be valid against the heirs. But the tenants have no title under the testator, or against the heirs, if the averments in the declaration are taken to be true; and they are to be so taken, in reference to the present question. It is for the tenants to show that they were entitled to notice of the demandants' application for a license; and this we think they have failed to do.

It was also objected, that the application to the judge of pro bate should have set forth the value, condition, and description of the several parcels of the estate of which the testator died seized, and that of which he died disseized; so that the judge of probate might have decided and directed what specific part of the estate should be sold. It is true that by § 3 the de mandants *might* have set forth in their application the value.

description and condition of the estate, or such part thereof as they proposed to sell; but they were *not obliged* so to do. So the court *may*, in all cases where it is not necessary to sell the whole estate, decide and direct what specific part of the estate shall be sold; but the court is *not bound* so to decide and direct; nor has this been the usual practice. In *Hays* v. *Jackson,* 6 Mass. 149, it was decided, that on the application of an executor for license to sell the real estate of the testator, for the payment of debts, the court may direct the sale of any specific part of the estate, for the purpose of marshalling the assets, where there are different interests in the claimants under the will, or between them and the heirs. And the clause in the Rev. Sts. *c.* 71, § 3, was undoubtedly introduced in reference to such cases. But the language is not imperative, requiring a specific direction of the part to be sold, in every case of a sale of a part only of the real estate. It provides that an executor or administrator *shall* set forth in his petition the amount of the debts due from the deceased, as nearly as they can be ascertained, the value of the personal estate, &c.; and if it shall be necessary to sell only a part of the real estate, he *may* set forth the value, description and condition of the estate, &c. That this latter clause was not intended to be imperative on executors and administrators, in all cases, seems to us to be obvious. The words of a statute are to be understood in their ordinary meaning and acceptation, unless it appears from the context that they were not intended to be so understood. But the application for the license does set forth every thing essentially necessary for the information of the judge of probate, in order to his deciding the question, whether it was a case requiring him to decide and direct, in the exercise of his legal discretion, what specific part of the estate should be sold. The application sets forth the description and condition of the real estate, although it does not expressly set forth the value, which is not material, unless the statute is to be so construed as to make it indispensable in all cases; which cannot be admitted.

*Nonsuit taken off, and a new trial granted.*