## BENJAMIN BLANEY *vs.* NANCY BLANEY & others.

The rule, established in England, — that residuary devises are to be regarded as specific, on the ground, that a testator can only dispose of the lands owned by him, at the time of making his will, — if it ever was in force here, was abrogateq by the Rev. Sts. *c.* 62, § 3, by which testators are enabled to dispose by will of subsequently acquired real estate.

Where the estate of a devisee is taken for the dower of the testator's widow, the right of such devisee to contribution, under the statute of 1839, *c.* 96, is the same that it would have been under the Rev. Sts. *c.* 62, §§ 25, 26, if the estate devised to him had been taken for the payment of the testator's debts.

A residuary devisee, whose estate is taken for the dower of the testator's widow, is not entitled to contribution from the other devisees, under the statute of 1839, *c.* 96.

THIS was a bill in equity, brought by the plaintiff, as the residuary devisee and legatee of Henry Blaney, deceased, against certain of the other devisees and legatees, to compel them to contribute, in proportion to their respective interests under the will, to make up the loss sustained by the plaintiff, by reason of the refusal of the widow of the testator tc

accept the provision made for her in the will, and the conse-
quent assignment of dower to her in the estate which was
devised to him.

The material facts, as they appear by the bill and answer,
on which the cause was heard, are as follows :

Henry Blaney, of Boston, made his will on or about the
tenth of June, 1842, and died in September, 1844. The
will was regularly proved, approved, and allowed, November
18th, 1844, and the plaintiff and Lemuel Capen, one of the
defendants, who were named as executors in the will, took
upon themselves the execution thereof, in the usual manner,
by virtue of letters testamentary.

The testator, at the time of making his will, and also at
the time of his decease, was the owner and in possession of
a lot of land, with a brick dwelling-house thereon, situated
on Temple Street ; of another lot of land, with a brick dwell-
ing-house thereon, situated on Common Street ; of a third
lot of land, with two brick dwelling-houses thereon, situated
on Washington Street; and of two lots in Mount Auburn
Cemetery.  He was also possessed of personal property, at
the time of his death, which was appraised at four thousand
nine hundred and eighty-eight dollars and thirty-three cents;
of which, after payment of debts, &c., a balance remained
of two thousand six hundred and two dollars and nineteen
cents.

The testator, by the *first* clause of his will, directs the
payment of debts and funeral expenses ; by the *fourth, fifth,*
*sixth* and *seventh,* he gives annuities for life to four persons,
amounting in the whole, whilst all the annuitants live, to
two hundred and fifty dollars a year, payable by his execu-
tors ; by the *ninth,* he gives specific legacies of one hundred
dollars each to two persons ; and by the *eleventh,* he names
his executors.  The other clauses, namely, the second, third,
eighth, tenth and twelfth, are as follows :

" *Second.*  To my beloved wife, Caroline Blaney, I give
and bequeath the sum of two hundred dollars a year during
her natural life, to be paid her by my executors in equal

semiannual payments, the first payment to be made in six months after my decease. I also give her the bedstead, bed, and bedding, which she now uses, and all her wearing apparel, trunks, and drawers. The above legacy is given to my wife in lieu of all claim of dower in the real estate of which I may die seized, and in full satisfaction of all claims on my estate."

"*Third.* I give, devise, and bequeath to Nancy Blaney, widow of my late brother Samuel, my house and land in Common Street, in said Boston, to have and to hold the same to her during her natural life, she paying the taxes and keeping the same in repair, and, after her death, I give, devise and bequeath the same to her children Charles and Anne, during their joint lives, and, after the death of either of them, to the survivor during his or her life, they paying the taxes and keeping the same in repair, while they hold the same ; and, after the death of the survivor, I give, devise and bequeath the same to my nephew, Benjamin Blaney, to have and to hold the same to him, his heirs and assigns forever. But, if the said Nancy Blaney prefers not to occupy or collect the rents of said house and land, I hereby direct my executors to collect the rents and take charge of the estate during her life, and to pay her the amount of rents received from the same, deducting the taxes and twenty-five dollars for repairs, insurance, &c."

"*Eighth.* I give and devise to my niece, Mrs. Mary Capen, wife of Rev. Lemuel Capen, of South Boston, my house in Temple Street, to have and to hold the same to her during the term of her natural life, she paying the taxes assessed thereon, and keeping the same in repair."

"*Tenth.* I give, devise, and bequeath to my nephew, Benjamin Blaney, son of my late beloved brother Joseph, my pew in Hollis Street church, and all my interest and estate in tombs at Mount Auburn, and all the rest, residue, and remainder of all my estate, property, and effects, of every description, real, personal, and mixed, of every description, not herein before disposed of, to have and to hold the same

to him, his heirs, executors, administrators, and assigns forever."

" *Twelfth.* I hereby authorize and empower my said executors to sell and dispose of any or all the real estate, of which I may die seized, and not specially devised, in such manner as they may think fit, and, after paying the other legacies, to invest the proceeds of any real estate they may sell, in good and productive securities, in such manner as to secure the payment of the annuities hereby given; or they may collect the rents of the real estate, and pay the annuities out of them, if they should prefer that course."

Caroline Blaney, widow of the testator, in November, 1844, renounced the provision made for her in the will, and claimed dower in the real estate; and, on her application to the judge of probate, commissioners were appointed, who, on the 11th of December, 1844, set off to her for her dower a part of the estate on Washington Street. The commissioners appraised the estate on Temple Street at eight thousand dollars, and the net annual income thereof at four hundred and thirty dollars; the estate on Common Street at seven thousand dollars, and the income at three hundred and fifty dollars; the estate on Washington Street at nineteen thousand dollars, and the income at seven hundred and ten dollars; and that portion of the latter, which was set off as dower, at eleven thousand three hundred and thirty-three dollars, and the income at four hundred and ten dollars. The doings of the commissioners were approved by the judge of probate, and dower was assigned accordingly, on the 16th December, 1844. The dower being wholly assigned in that portion of the testator's real estate, which passed under the residuary clause to the plaintiff, he agreed with the widow to receive from him, in lieu thereof, an annuity of five hundred and fifty dollars, during her life, which he covenanted to pay, and which he had paid, so far as the same had become due.

The bill was brought only against the devisees of the real estate on Common and Temple Streets; the plaintiff waiving all claim against the annuitants and legatees, and agreeing,

if contribution should be decreed, that their proportions thereof should be charged to him.

*S. E. Sewall,* for the plaintiff. The sole question is, whether a general residuary devisee is entitled to contribution. The *St.* of 1839, *c.* 96, § 1, seems conclusive. It provides that when the estate of one devisee shall be taken for the widow's dower, all the other devisees and legatees shall contribute their proportions of the loss to the devisee whose estate is so taken. A residuary devisee is as much within the words of the statute as a specific devisee. The plaintiff is therefore entitled, unless excluded by some principle of law. The only suggestion, that can be made, is, that the testator intended the dower to be a charge on the residue. But such does not appear to have been his intention. He charged the residue with nothing more than the payment of an annuity of two hundred dollars to the widow; and he must be presumed, therefore, to have intended that the devisee of the estate on Washington Street should have the benefit of it subject to that annuity, as much as that the other devisees should have the benefit, subject to the charges thereon, of the estates devised to them respectively.

Debts and legacies are to be paid at the charge of the residue; because what is thus given is only what is left after such payments. According to the terms of the bequest to the widow, in lieu of dower, the annuity of two hundred dollars was to relieve the whole of the testator's real estate of which he might die seized, — that devised by the residuary clause, as well as that specifically devised, — from all charge of dower, and to be in full satisfaction of all claims on his estate. The residuary and other devisees were thus put upon the same footing by the will; and if the statute had intended to discriminate between them, it would have contained apt words for the purpose.

It is the rule, in England, that where land is devised by a residuary clause, it is to be considered as specifically devised; for the reason, that a will only operates on land owned by the testator, at the time it is made, and therefore a residuary

clause is in fact a gift of the land so owned. 2 Jarman on Wills, 547; *Mirehouse* v. *Scaife*, 2 Mylne & Craig, 695. The same doctrine has also been recognized in this commonwealth, in the case of *Wyman* v. *Brigden*, 4 Mass. 154, in which Parsons, C. J., said, that "a devise of land is, in all cases, considered a specific devise, whether devised by a specific or general description, to a particular devisee, or to the residuary devisee."

Residuary devisees do not stand upon a different footing from others in this respect. There may be cases, in which residuary and even pecuniary legatees will be entitled to contribution; as, for example, in the case of *Dyose* v. *Dyose*, 1 Peere Wms. 305, the reason of which applies strongly to the present case. There, the testator, at the time of making his will, had a general understanding of the state and condition of his property, and made his will accordingly; afterwards his property underwent a change, the consequence of which was a deficiency of assets; and the court of chancery, considering the special circumstances of the case, ordered an account to be taken, and allowed the residuary legatee to come in, *pari passu*, with the other legatees. This case was found fault with by lord Thurlow (*Fonnereau* v. *Poyntz*, 1 Brown Ch. 478,) but he never made any decision against it. Other cases may also be mentioned, in which an exception to the general rule occurs, when the reason of the rule fails; as, in the case of *Biederman* v. *Seymour*, 3 Beavan, 368, in which the heir, who had been obliged to satisfy the demands of creditors, was allowed contribution from the devisees. The heir stands very much in the situation of a residuary devisee or legatee; but yet the rule was held not to apply to him, where it was the manifest intention of the testator to put him upon the same footing with devisees and legatees.

In New York, it is provided by statute, (2 Rev. Sts. p. 65, § 49), that a child of the testator, born after the making of the will and not mentioned in it, shall be entitled to a share of the estate, to be contributed by the several devisees and

legatees, in proportion to their respective interests ; and in *Mitchell* v. *Blaine*, 5 Paige, 558, the chancellor says, that the statute makes no distinction between general, specific, and residuary legatees, and that no such distinction was intended. Consequently, a legacy, or devise in lieu of dower would be included. So, in the present case, it is contended that the plaintiff is within the words, meaning, and reason, of the statute of 1839, *c.* 96 ; and that a different construction would be contrary to equity.

*W. C. Aylwin*, for the defendants. By the common law, the defendants are not bound to contribute ; neither are they by the statute of 1839, *c.* 96, when rightly understood. This statute is to be considered, *first*, in connection with the will, and, *secondly*, in connection with the other statute laws relating to the same subject.

1. The statute contains a proviso, that no devisee or legatee shall be held to contribute, " who may be exempted therefrom by the provisions of the will." By the terms of the will, in the present case, it is manifest, that the testator intended to exempt the specific devises from contribution. He authorizes his executors, by the twelfth clause, to sell any or all of the real estate, of which he might die seized, and which was *not specially devised*, and to invest the proceeds thereof for the payment of the annuities ; thus exempting the specific devises from any charge on that account. Besides, the intent is further manifested, negatively, not to impose any burden of contribution upon the specific devisees, by the charge imposed upon them, affirmatively, to pay the taxes and make necessary repairs, and nothing more.

2. The statute of 1839, *c.* 96, taken in connection with the other provisions of law relating to this subject, instead of furnishing a ground for the plaintiff, is conclusive for the defendants. That statute can only be regarded as an addition to the Rev. Sts. *c.* 62, §§ 23, 25, 26, — as forming a part of the same system, — and as extending the obligation of contribution to cases, in which the estates of devisees are taken for dower ; but there is no ground for supposing, that the

10*

legislature intended to make devisees liable in any different manner, or to any greater extent than they were before; and, according to the construction heretofore given to the language of the above mentioned sections, residuary devisees are not entitled to contribution.

The English cases relating to the marshalling of assets, which have been cited, are not applicable. *Hays* v. *Jackson*, 6 Mass. 149; *Humes* v. *Wood*, 8 Pick. 478; *Hubbell* v. *Hubbell*, 9 Pick. 561. At common law, no claim of this kind could be made, but upon the ground of a warranty. *Harbert's case*, 3 Co. 12.

METCALF, J. The plaintiff's claim is founded on *St.* 1839, c. 96, § 1, which is in these words: " Whenever the estate of one or more devisees under a will shall be taken or assigned, by the judge of probate, for the dower of the widow of the testator, or be set out to her upon a judgment rendered in an action of dower at common law, all the other devisees and legatees shall contribute their respective proportions of the loss to the person from whom the estate is so taken or set out, so as to make the loss fall equally upon all the devisees and legatees, in proportion to the value of property received by them under the will : Provided, that no devisee or legatee shall be held to contribute as aforesaid, who may be exempted therefrom by the provisions of the will."

In giving a construction to this statute, it is proper to take into consideration the previous statutes and the common law.

By *St.* 1783, c. 24, § 18, it was provided, that when any chattels or real estate, given to any person by last will, should be taken in execution for the payment of the testator's debts, or should be sold therefor according to law, " all the other legatees, devisees and heirs " should refund their proportional part of such loss to the person from whom the bequest should be so taken away, and that he might maintain a suit at law to compel such contribution. The claimants under a will, who were by this statute made liable to contribution, are described in the same terms that are used in *St.* 1839, c. 96, namely, " *all* the other legatees and devisees." Yet

we find in the earliest cases which arose under *St.* 1783, *c.* 24, § 18, that it was contended by counsel, that this section should not be taken literally, but should be so construed as not to affect the preëxisting common law doctrine, that specific devises and legacies shall be exempted from abatement when the other devises and legacies are sufficient to pay the testator's debts. See 2 Dane Ab. 250, *et seq.* In *Hays* v. *Jackson*, 6 Mass. 149, this construction was authoritatively settled by the court; and it was recognized and confirmed by the Rev. Sts. *c.* 62. By §§ 25, 26, of that chapter, it is enacted that " when any estate, real or personal, that is devised, shall be taken from the devisee, for the payment of the debts of the testator, all the other devisees and legatees shall contribute their respective proportions of the loss to the person from whom the estate is taken; " provided, however, that " if the testator shall, by making a specific devise or bequest, have virtually exempted any devisee or legatee from his liability to contribute with the others for the payment of the debt, or if he shall, by any other provision in his will, have prescribed or required any appropriation of his estate, for the payment of his debts, different from that prescribed in the preceding section, the estate shall be appropriated and applied in conformity with the provisions of the will." And by § 27 it is declared that the foregoing provisions shall not impair, or in any way affect, the liability of the whole estate of the testator for the payment of his debts, but shall apply only to the marshalling of the assets, as between those who hold or claim under the will.

By the established rule of marshalling assets, specific devises and legacies are not to be taken for payment of the testator's debts, until the general devises and legacies are exhausted. A residuary legacy is not regarded as specific, and a residuary legatee cannot call upon the other legatees to abate. 6 Mass. 151; 3 Wooddeson, 532; Preston on Leg. 359; 1 Roper on Leg. (1st Amer. ed.) 284; 2 Jarman on Wills, 546, 547. If, then, the land devised to the plaintiff

had been taken for payment of the testator's debts, it is very clear that he would have had no claim on the other devisees and legatees for contribution.   It is equally clear that he has no such claim, if the devise to him is not a specific devise.

Two questions remain.   Is the devise to the plaintiff specific ?   If not, does *St.* 1839, *c.* 96, give him a right to contribution ?

1. It seems by the English authorities, that residuary devises have been regarded as specific, on the ground that a testator could dispose only of the lands owned by him when his will was made, and therefore that a residuary devise was a gift of such lands only ; and that the lands devised were subject to the rule of marshalling assets, which leaves specific devises untouched, if the general legacies and devises are sufficient, with the other property, to pay the testator's debts.   2 Jarman on Wills, 547.   It may well be doubted whether this rule of the English law was ever adopted in this commonwealth.   For though Parsons, C. J., seems to have recognized it, incidentally, in *Wyman* v. *Brigden*, 4 Mass 151, cited by the plaintiff's counsel, yet in the subsequent case of *Hays* v. *Jackson*, 6 Mass. 149, he held that a residuary devise, like that which was made to the present plaintiff, could not be considered as specific, within the rule of marshalling assets.   And the court, upon a petition for license to sell real estate for the payment of a testator's debts, ordered the estate, given to the residuary devisee, to be sold, before selling that which was specifically devised.

But we are of opinion, that since the Rev. Sts. *c.* 62, § 3, have enabled testators to devise lands acquired after the making of their wills, by clearly manifesting, by their wills, their intention so to do, the English rule above mentioned, if it ever was in force here, can exist no longer.

On inspecting the will under which the plaintiff claims, we cannot doubt the testator's intention to give to the plaintiff all the property not before disposed of by the will.   He manifestly had in his mind the possible acquisition of real estate after the making of his will.   He made a provision for

his widow, in lieu of dower in the real estate of which he might "die seized." And after devising and bequeathing to the plaintiff "all the rest, residue and remainder of all" his "estate, property and effects, of every description, real, personal and mixed," not before disposed of, he authorized his executor (who was the plaintiff) to sell and dispose of any or all the real estate (not especially devised) of which he might "die seized." See *Pray* v. *Waterston*, 12 Met. 262.

2. We are of opinion that the plaintiff's right to contribution, under *St.* 1839, *c.* 96, is no greater than it would have been under the Rev. Sts. *c.* 62, §§ 25, 26, if the estate devised to him had been taken for payment of the testator s debts. By those sections, he could not have had contribution from those to whom specific devises or bequests were made ; because they would have been virtually exempted, by the testator, from liability to contribute. And under the proviso in *St.* 1839, we hold that all the defendants, whether their legacies and devises are technically specific or not, are exempted from contribution "by the provisions of the will." This exemption results from the nature and effect of a disposition of property by a residuary devise or bequest. Nothing is given by such a devise or bequest, except on a contingency that something shall remain after all paramount claims on the testator's estate are satisfied. The claim of dower, the demands of creditors, the rights of posthumous children not provided for, of children or the issue of deceased children, for whom the testator unintentionally omits to provide, and of other legatees and devisees, must all be satisfied, in the order prescribed by law, before the residuary devisee can take any thing. Whenever, therefore, a testator makes such a devise, without any modification thereof, he, by the necessary legal effect of "the provisions of the will," exempts all other devisees and legatees from contribution to the residuary devisee, towards the loss which he may sustain by the taking, for the dower of the widow, the estate devised to him.

*Bill dismissed.*